ESTATE OF SCHROEDER: SCHROEDER, Executor, Respondent, v. GATEWAY TRANSPORTATION COMPANY, INC., and others, Appellants.

*No. 183. Argued November 2, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 860.)

For the appellants there were briefs by *Charles Q. Kamps, William A. Stearns,* and *Quarles, Herriott, Clemons, Teschner & Noelke,* all of Milwaukee, and oral argument by *Mr. Stearns.*

For the respondent there was a brief by *James G. Howard* and *Binder, Zirbel & Howard,* all of Milwaukee, and oral argument by *James G. Howard.*

BEILFUSS, J.   We believe a determination of two issues will resolve the appeal:

1. Is the action barred by the two-year statute of limitations (sec. 893.21 (5), Stats.) ?

2. Is the regulation "a covenant not to compete" and is it invalid under sec. 103.465, Stats.?

The appellants, Gateway and the trustees, contend that the two-year statute of limitations applies.  Sec. 893.21 (5), Stats., provides:

"893.21 **Within 2 years.** Within 2 years: . . .

"(5) Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services."

The respondent-executor argues, and the trial court found as a matter of law, that sec. 893.19 (3), Stats., applies.  It provides:

"893.19 **Within 6 years; one year notice of damage by railroad.** Within 6 years: . . .

"(3) An action upon any other contract, obligation or liability, express or implied, except those mentioned in ss. 893.16 and 893.18."

In support of his position the respondent argues that this is an action to enforce a contract rather than an action to collect wages or earnings because benefits paid under a pension plan constitute more than wages. He further argues that the consideration for benefits is the continued loyalty and service given by an employee to his employer.

The appellants contend that the pension benefits are but deferred compensation and, as such, the two-year statute of limitations applies.

In *Voight v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 128 N. W. 2d 411, a pension plan provided by an employer was held to be a part of the contract of employment. We stated at page 116:

"Noncontributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period. [And cases therein cited.]"

*Estate of Javornik* (1967), 35 Wis. 2d 741, 749, 151 N. W. 2d 721, defined "personal services" as found in sec. 893.21 (5), Stats., as follows:

"We think 'personal services' as used in sec. 893.21 (5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service. While some personal services may result in a salable article or an end product, the distinguishing feature of personal services for the purpose of

this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased."

In this case the appellants admit that the pension plan was an employee retention device. In appellants' brief the following argument is made:

"One of the main purposes of a pension plan, however, is employee retention. The cost of hiring and training new employees is great, and to the extent that an employer can reduce turnover on its payroll, it can reduce its labor costs. In addition, of course, an experienced employee is more efficient than an untrained person."

It is clear that Gateway recognized that it was receiving more than the labor of Schroeder. His continued employment saved Gateway money in at least two ways. Schroeder would be more efficient than a newly hired employee. Also, the cost of training a new employee was high and Schroeder's continued presence saved or postponed this cost.

In *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 188 N. W. 2d 507, we held that a plaintiff's action seeking to recover an amount due under a stock purchase plan was not barred by the two-year statute of limitations but rather involved the six-year statute of limitations. This court based its holding partly on the fruit of the labor theory advanced in *Estate of Javornik, supra,* and partly on the rationale that the two-year statute of limitations would be construed narrowly.

Appellants rely on *Casey v. Trecker* (1954), 268 Wis. 87, 66 N. W. 2d 724, for their argument that the pension benefits are wages or compensation for services. However, *Casey* involved an employee's claim for unpaid wages against a bankrupt corporation. The action was brought against the two shareholders of the corporation. The cause of action arose under a statute which provided that shareholders would be liable for all debts due and ow-

ing to its clerks, servants and laborers for services performed by such corporation. Nothing more was involved in *Casey* than the lost wages.

In this case there is no doubt that Schroeder could not have collected the "deferred compensation" as a matter of right before he retired. Therefore, his right to pension payment was more than a claim for wages. As such, we hold that the six-year statute of limitations applies to this case for the reasons that this court advanced in *Younger v. Rosenow Paper & Supply Co., supra.*

The respondent-executor contends, and the trial court ruled, that Administrative Regulation No. 2 is a covenant not to compete and consequently is subject to sec. 103.465, Stats. Further, that the regulation as a covenant not to compete is an unreasonable restriction and violates sec. 103.465. The appellants argue that the regulation is merely an employee retention device and that the clause makes no reference to competition and that sec. 103.465 is inapplicable.

The regulation in question provides:

"2. *Employment After Retirement.* Any person who, after retiring from Gateway, accepts employment from others in the transportation industry, shall forfeit all benefits under this plan from the date of such employment."

The relevant statute, sec. 103.465, Stats., provides:

"**Restrictive covenants in employment contracts.** A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint."

It is noted that appellants argue that the clause is only an employee retention device. However, in their appeal brief the following two statements occur:

"Similarly, the restriction on employment after retirement in the Gateway plan is, and is intended to be, an economic restriction on an employee's future employment anywhere in the transportation industry. . . .
". . . The restriction applies whether or not the new employment is competitive in the sense that the new employer operates in Gateway's market area."

The plain meaning of appellants' statements is that this regulation intends to restrict a retired Gateway employee so that he cannot work elsewhere in the transportation industry without forfeiting his pension benefits. It is our opinion the regulation is a covenant not to compete and therefore it falls within the ambit of sec. 103.465, Stats. The next question that arises is whether the regulation is a reasonable restriction.

In *Union Central Life Ins. Co. v. Balistrieri* (1963), 19 Wis. 2d 265, 267, 120 N. W. 2d 126, we considered the following clause:

" 'The undersigned further agrees that if his contract with said company shall be terminated for any reason and he shall become engaged directly or indirectly, within a period of two years from the date of such termination, in the writing of life insurance in any state or territory in which the Union Central is licensed to operate, for any person, firm, or corporation, then, and in such event all moneys receipted for hereby, less any credits arising from the application or commissions and persistency allowances, shall become a debt due and owing from the undersigned to said company, which debt the undersigned agrees to pay immediately upon demand, and which debt shall bear interest at the rate of six percent (6%) from the date of said demand until paid.' "

This court found that the clause was a covenant not to compete, stating at page 270:

". . . Here the defendant-employee made no agreement not to compete with his former employer nor is the employer asking the court to restrain defendant's activities. Nevertheless, in our view it is equally clear that the second paragraph of the instrument signed by the employee in consideration of receiving the advance imposes a penalty (liability for debt) if, and only if, the employee writes life insurance anywhere in the entire national area in which the employer is licensed to operate. Although the agreement is not expressed as a restriction against competition by the employee, its undoubted object and effect is that of a powerful deterrent to the employee's exercise of the right to compete, particularly where, as here, the penalty involved is a substantial sum of money."

The regulation in this case is also a powerful deterrent to the employee's right to compete. The amount of the penalty to Schroeder was over $12,000.

In *Union Central Life Ins. Co. v. Balistrieri, supra,* we further held that the clause was an unreasonable restriction because the plaintiff could not write life insurance in any state in which the defendant insurance company was licensed to do business. The insurance company was licensed to do business in all 50 states.

The situation in the instant case is analogous to that in *Union Central.* Schroeder could not obtain employment of any type in the transportation industry. No geographical or time restrictions were placed on the clause in the instant case. The regulation in the instant case is even more sweeping than that clause involved in *Union Central,* where both an occupation and time limit restriction were placed in the clause. The regulation is an unreasonable covenant not to compete.

The appellants argue that *Liddicoat v. Kenosha City Board of Education* (1962), 17 Wis. 2d 400, 117 N. W. 2d 369, is the controlling precedent for the facts of this case. We do not so interpret it. *Liddicoat* involved a situation where a tenured teacher took a six months'

leave of absence on the condition that he was not to engage in any paid employment. He took a full-time job. The board of education revoked his tenure and re-employed him at the lower salary of a beginning teacher. This court held that the condition was not a covenant not to compete, although it was willing to assume, in discussing one issue, that the restriction was such a covenant. The facts in *Liddicoat* clearly disclose that the teacher was free to quit and work anywhere he pleased. What he could not do was maintain his favored status in the school system and work at another job outside the school system.

Since the regulation here is an unreasonable covenant not to compete, it violates the terms of sec. 103.465, Stats. Therefore the regulation is void and cannot be enforced. *Union Central Life Ins. Co. v. Balistrieri, supra,* page 271, with cases cited therein; *Holsen v. Marshall & Ilsley Bank* (1971), 52 Wis. 2d 281, 190 N. W. 2d 189.

Because we have determined that the regulation is an unreasonable covenant not to compete it is unnecessary to reach the further issues presented in this case. However, upon consideration of the pension plan we feel that it is very doubtful whether the trustees had the power to amend the plan as they did in adopting Administrative Regulation No. 2. Were we to consider the issue it is probable we would conclude that only the employer who formulated the plan had the power to provide for this sort of ineligibility.

*By the Court.*—Judgment affirmed.