LORENZ and others, Respondents, v. DRESKE and another, Appellants.

*No. 162. Submitted under sec. (Rule) 251.54 November 28, 1973.— Decided February 18, 1974.*
(Also reported in 214 N. W. 2d 753.)

274

For the appellants the cause was submitted on the briefs of *Joseph C. Niebler* and *Miller & Niebler, S. C.,* all of Milwaukee.

For the respondents the cause was submitted on the brief of *Wilcox & Wilcox* and *Francis J. Wilcox,* all of Eau Claire.

WILKIE, J. Several issues and pleadings are raised in this appeal. Precisely stated, the questions raised are as follows:

1. Are services performed by a physician in establishing a program for the care and maintenance of disturbed children professional services within the meaning of sec. 893.21 (5), Stats.?

2. Do causes of action II through VI fail to state facts sufficient to constitute a cause of action?

3. Were causes of action II through VI defective for failure to join necessary parties?

4. Should a demurrer have been granted because of the pendency of a prior action for the same cause of action?

5. Should the defendants' motion to strike the plaintiffs for failure to comply with the order to join Northwest Psychiatric Clinic and because they are not the real parties in interest have been granted?

1. *First cause of action—services by plaintiff Lorenz.* In the first cause of action, the plaintiff Albert A. Lorenz seeks to recover the reasonable value of services rendered to the defendants prior to the establishment of the Albert A. Lorenz Institute during the period from May 15, 1967, to June 1, 1968. Lorenz alleges that he performed "consultive and professional service in planning, designing

and development of a program for the care and treatment of disturbed children and in assisting and bringing about the acceptance of such program by the professional community and by the licensing agencies of the State of Wisconsin and by those agencies, municipal and private having the care and custody of such children." He further alleges that the defendants agreed severally to compensate him for the reasonable value of such services and that the services he rendered, based upon the usual and ordinary charges for professional consultation and advice have a reasonable value of $42,641.

The defendants demurred to this cause of action on the ground that the applicable statute of limitations had run. The defendants assert that this cause of action claims compensation for personal services performed more than two years prior to the commencement of the action and is thus barred by sec. 893.21 (5), Stats.[1] The plaintiff alleges that he performed professional services which are specifically excepted from the two-year limitation period. The defendants dispute that the services alleged to have been rendered come within that exception. They assert that the allegation that the services were professional is merely a conclusion of law which is not admitted on a demurrer.[2] The plaintiff contends that the allegation in this first cause of action is a well-pleaded statement of ultimate fact admitted by the demurrer. It is more correct to categorize the allegation of "professional services" as a matter of mixed law and fact.

---

[1] "Sec. 893.21 . . . Within 2 years: . . .

"(5) Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services."

[2] *Sipple v. Zimmerman* (1968), 39 Wis. 2d 481, 489, 159 N. W. 2d 706: " 'By demurring to the complaint the defendant admitted all of the facts well pleaded therein but it did not admit conclusions of law nor did it admit erroneous conclusions drawn from such facts by the pleader even though the conclusions bear the semblance of statements of facts. . . .' . . . ."

" 'Matters of mixed law and fact, the ultimate of which is, in a broad sense, a fact, may be pleaded according to their legal effect. . . . every reasonable intendment must be indulged in in favor of the pleading.' " [3]

The adjective "professional" is a factual description but since the term is used in a statute which applies to this cause of action it may also have a legal definition which differs from other common uses of the adjective. Therefore, since legal consequences flow from the use of the term it is in a sense a conclusion of law.

The defendants contend that professional services of a physician and psychiatrist can only mean those services rendered in the actual treatment of patients—the practice of the medical profession. This would be a very narrow definition of the meaning of professional services.

In *Estate of Javornik* [4] this court did define the meaning of "personal services" under the statute.

"We think 'personal services' as used in sec. 893.21 (5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service."

In *Younger v. Rosenow Paper & Supply Co.* [5] this court described this as a narrow construction of the statute. In *Younger* the court concluded that a bonus plan was not compensation within the meaning of the statute and in *Estate of Schroeder* [6] a pension plan was considered to involve more than wages and so was not barred by the two-year statute of limitations. Thus the statute has been

---

[3] *Larson v. Lester* (1951), 259 Wis. 440, 443, 49 N. W. 2d 414

[4] (1967), 35 Wis. 2d 741, 749, 151 N. W. 2d 721.

[5] (1971), 51 Wis. 2d 619, 188 N. W. 2d 507.

[6] (1971), 53 Wis. 2d 59, 191 N. W. 2d 860.

narrowly construed in favor of litigants to limit the number of actions which are barred. A broad interpretation of "professional services" is in keeping with this trend to limit those actions barred by the statute.

It is true that the nature of a service performed is not necessarily determined by the profession of the person performing the service. Thus, an attorney or a doctor may have a business in addition to his professional practice and any services performed as a businessman would not be rendered "professional services." However, simply because certain services may be performed by persons who are not members of a particular profession, this does not mean that when they are performed by a member of a profession they may not be considered professional services.

In *Case v. Ranney* [7] the Michigan Supreme Court had occasion to interpret a statute which allowed the commencement of an action by capias where the action was for misconduct or neglect in any professional employment. The court discussed "professional services" of an attorney in the following manner:

". . . Professional services in the legal profession are not limited to litigation. In the matter of giving advice, managing a business, devising plans to meet contingencies, effect results and make collections, the professional services of an attorney often combine with services which ordinarily are not classed as strictly professional, and yet the employment as an entirety and the services as a whole are to be recognized as professional. Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking."

Thus it appears that if the plaintiff Lorenz was requested by the defendants to perform the alleged services because

[7] (1913), 174 Mich. 673, 682, 140 N. W. 943.

of his expertise and professional training in the field of psychiatry and that he did utilize such knowledge and training in performing the services, there is no reason not to consider the services "professional." However, as recognized in the *Ranney Case,* whether the services performed were correctly classified as "professional" would depend upon the entire factual context.

Here, the trial court overruled the demurrer based on the statute of limitations because it could not conclude on the pleadings alone that the services performed were not "professional." The trial court said:

". . . Lorenz is an M.D., and defendants say the nature of the services alleged in the complaint are not medical services, therefore not professional, or within the profession of Lorenz so as to be barred by the statute. This court at the demurrer stage cannot conclude that services allegedly professional were personal services as opposed to professional services so as to bring the statute into play. Whether the services allegedly performed were in fact professional will depend upon the evidence adduced on the trial, but the pleaded facts are sufficient to constitute a cause of action and defendants' demurrer must be overruled."

We conclude that as to this first challenge to the complaint the trial court was correct in overruling the demurrer. It does not appear from the complaint that the plaintiff cannot prove a set of facts which would entitle him to recover on his cause of action.

The defendants seem to be arguing that the cause of action does not allege that the plaintiff seeks to recover "fees." The defendants and the plaintiffs discuss the cause of action as if it were one sounding in *quantum meruit.* However, the cause of action alleges an express agreement by the defendant to pay the plaintiff the reasonable value of his services. It may be that at the trial the plaintiff will be unable to prove a valid and enforceable contract and that recovery would have to be on the

basis of a contract implied in law to avoid unjust enrichment to the defendants. However, liberally construed, the cause of action does set out a claim for fees even though the word is not used expressly. The measure of recovery would not change the fact that it is "fees for services" sought to be recovered in the action.

2. *Causes of action under Causes II through VI.* The defendants claim a failure of causes II through VI to state facts sufficient to constitute a cause of action. The causes of action all name Clinicare Corporation and George R. Dreske individually as defendants.

As to defendant Clinicare the trial court held that plaintiff Lorenz had clearly stated causes of action in II through VI. We agree. In cause I Lorenz pleaded an agreement to pay for services in designing a program of care. In cause II Lorenz pleaded an agreement of employment whose terms are contained in a letter of May 14, 1970. He pleaded that the defendant owed him $13,284.64 for services performed pursuant to the agreement. In cause of action III Lorenz alleges he performed services under a contract of employment whose terms are set forth in a document dated February, 1971. He alleges that he performed services as agreed and has not been paid the agreed compensation. He asks for $11,214.13. In causes of action IV and V Lorenz alleges that services were performed for several children under Clinicare's custody and supervision in foster homes and at the Institute. He alleges that Northwest Psychiatric Clinic paid the persons who rendered these services in reliance on the agreement of Lorenz to reimburse Northwest. Lorenz further alleges that Clinicare rendered bills to various agencies for these services on behalf of Lorenz and that the fees were collected and never turned over to Lorenz. In cause of action VI Lorenz seeks damages for the breach of his employment contract when Clinicare dismissed him as medical director of the Albert A. Lorenz

Institute on June 6th or 7th of 1971. As to causes of action I, II, III, and VI, Lorenz has pleaded agreements of employment either oral or written, the performance of the agreed services and the failure of the defendants to pay the agreed compensation. Causes of action IV and V are more complicated. They allege, in essence, that the defendants agreed to collect charges due to Lorenz for the care of certain children from agencies and that the defendants did collect such charges but failed to turn over the money to the plaintiff Lorenz. These allegations set forth facts to show either an express or a constructive trust of such funds in the hands of the defendant Clinicare.

The two other plaintiffs, Polder and Lee, are joined with the plaintiff Lorenz in causes of action II, III, and VI. Cause of action II alleges that all three plaintiffs contracted to perform services for the defendant Clinicare, that they did perform such services and that they were not paid. Cause of action III alleges that they entered a memorandum of understanding under which they were to furnish services, that they did furnish the agreed services and that they were not paid. Cause of action VI alleges that the three plaintiffs were damaged by their wrongful discharge from employment under the agreement. It is true that Exhibits A and B, which are alleged to be the agreements under which the services in causes of action II and III, respectively, were furnished, appear to be between the plaintiff Lorenz and Clinicare only. The other two plaintiffs are mentioned in the documents. However, the allegations do state that Polder and Lee furnished services under the exhibits and that they were not paid. A complaint is to be liberally construed and if it states any facts on which a plaintiff can recover it is not demurrable.[3] The trial court stated in its first

[3] *Nelson v. La Crosse Trailer Corp.* (1949), 254 Wis. 414, 37 N. W. 2d 63.

decision on demurrer that it was not important to determine whether the exhibits should be interpreted as constituting contracts of Polder and Lee or whether they were intended to be third-party beneficiaries. At the very least the two plaintiffs have alleged facts which would allow a recovery on the theory of *quantum meruit*. We agree with the trial court that plaintiffs Polder and Lee have alleged facts sufficient to constitute a cause of action against the defendants.

The defendant Dreske maintains that no facts have been alleged which state a cause of action against him personally. The trial court did sustain Dreske's demurrer to cause of action II because that cause of action merely alleged that Dreske was acting in his capacity as president of Clinicare in accepting the proposal evidenced by Exhibit A. The plaintiffs have not appealed this order of December 6, 1971.

Cause of action I clearly alleges that the defendants severally agreed to compensate the plaintiff Lorenz. Whether the plaintiff is going to be able to prove this allegation is for the trial and we must rule that on this point the complaint alleges sufficient facts to constitute a cause of action.

Causes of action III, IV, V and VI incorporate allegations that Dreske diverted funds of Clinicare to himself so that Clinicare was not able to meet its obligations to the plaintiffs. The complaint also alleges that Dreske "for his own purposes and contrary to the best interests of the defendant Clinicare Corporation" interfered and prevented the plaintiffs from properly performing the provisions of their contracts with Clinicare in various respects including the refusal to issue or permit to be issued payroll checks by Clinicare for work done at the Institute. Paragraph 20 of the complaint alleges that breaches of the contract by Clinicare resulted in part from the wrongful acts of Dreske.

In its second memorandum decision the trial court indicated that the facts alleged might or might not constitute a cause of action against Dreske personally. The trial court granted a motion to make the allegations more definite and certain. The second amended complaint did allege specific acts of interference by the defendant Dreske. The trial court in its third memorandum opinion denied Dreske's demurrer without comment referring to his earlier decisions.

The trial court was correct in overruling the demurrer of Dreske. One who, without a privilege to do so, induces another or causes a third person not to perform a contract with another is liable for the harm caused thereby and any conduct which is intended to and which makes performance of a contract more onerous is a tort against the promisor unless privileged.[9] This court has even recognized that a cause of action is maintainable for unlawful interference with an employment contract terminable at will.[10]

Ballantine[11] discusses the liability of officers for causing or authorizing a breach of contract by the corporation as follows:

"Some difficulty has been encountered by the courts in dealing with the problem of the liability of the directors or the officers of a corporation for procuring, causing or authorizing a breach of contract by the corporation. A few decisions have declared that directors or officers may not be held liable for causing their corporation to violate its contract, regardless of their ulterior motives or malice.

"This seems clearly an unsound doctrine. An agent is not relieved from liability by the fact that he is acting on account of his principal, except where he is exercising

[9] *Wisconsin Power & Light Co. v. Gerke* (1963), 20 Wis. 2d 181, 121 N. W. 2d 912.

[10] *Mendelson v. Blatz Brewing Co.* (1960), 9 Wis. 2d 487, 101 N. W. 2d 805.

[11] Ballantine, *Corporations*, pp. 275, 276, sec. 112.

a privilege of the principal or where he himself has a privilege to act for the benefit and protection of the principal. If a director or managing officer acting *bona fide* procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as protected only by a conditional privilege, which will be destroyed by a wrongful motive. This conditional privilege of corporate representatives should be recognized in the interest of freedom in exercising discretion to protect the best interests of the corporation which they represent. In the absence of such a privilege, the repudiation of performance of an unfair and ruinous, but valid, contract by a corporation would involve not only liability for breach of contract on the part of the corporation, but joint and several tort liability on the part of all the directors who acted for the corporation in terminating performance. . . . If directors are acting in good faith for the protection of the interests of their corporation and in the course of their official duty, they should be protected . . . . [footnotes omitted]"

In *Mendelson v. Blatz Brewing Co.*[12] this court held a complaint sufficient if it spelled out a cause of action in either respect where two causes of action were alleged. *Mendelson* indicated that in order to plead a cause of action against an officer of a corporation personally, it is not necessary to specifically allege malice. It is only necessary to allege that the act of procuring a breach of contract was done with an improper motive.

Thus we conclude that the trial court was correct in overruling Dreske's demurrer to causes of action III, IV, V and VI. The allegations sufficiently allege the procuring of breaches of contract by Dreske with an improper motive and thus he should be personally liable for the harm resulting therefrom.

3. *Were causes of action II, III, IV, V and VI defective for failure to join Northwest Psychiatric Clinic as a necessary party?* The trial court, in its second decision

---

[12] *Supra,* footnote 10.

on demurrer in this case, determined that Northwest Psychiatric Clinic was a necessary party to the action. In the second amended complaint the plaintiffs pleaded an assignment by Northwest of any claims it might have against Clinicare Corporation or George Dreske arising from any services rendered by the three plaintiffs. In their demurrer to this second amended complaint the defendants contend that the assignment is invalid and that, therefore, the plaintiffs should be struck for failure to comply with the decision and order of the trial court. The trial court in its second decision said:

". . . Since Northwest was the beneficiary of the alleged contracts between Lorenz (Polder and Lee) and Clinicare, it could bring an action for identical relief demanded by the plaintiffs in this action. Any judgment that is to be entered in any contract action should be binding upon all beneficiaries of the contract. It therefore follows that Northwest should be a party either plaintiff or defendant so that a complete determination of rights between the parties can be made."

The trial court apparently decided that Northwest Psychiatric Clinic was a third-party beneficiary of the alleged agreement between the plaintiffs and the defendants. This is an incorrect conclusion. The Northwest Psychiatric Clinic is not mentioned as a party to any of the alleged agreements and the plaintiff Lorenz did not sign any documents as an officer of the Northwest Psychiatric Clinic. The plaintiffs did allege that they were under oral contract to the Northwest Psychiatric Clinic which paid them a full-time salary. They further alleged that if they did not perform full-time services to the Northwest Psychiatric Clinic, they had to account for their time and reimburse the clinic for any losses occasioned thereby. The plaintiffs also alleged that they had agreed to turn over to the Northwest Clinic any fees for services rendered to any persons or institutions other

than Northwest Psychiatric Clinic. This was a separate oral contract between the plaintiffs and Northwest Psychiatric Clinic which is enforceable between the parties. This does not mean that the Northwest Psychiatric Clinic can enforce separate contracts entered into between the plaintiffs and other individuals and institutions and demand that these parties pay Northwest Psychiatric Clinic directly. It is true that Northwest will benefit from the rendering of "outside" services by those on its full-time staff but this does not mean that Northwest has acquired rights to enforce all debts for services rendered by its staff members. Those patients receiving treatment by staff members, such as the plaintiffs, may not even know of the existence of any relationship between the professional personnel and Northwest. And even if they did know of such a relationship it would have to appear clearly that any engagement of services of the staff members was for the benefit of Northwest. Before a third party can recover upon a contract made between other parties for his benefit, there has to be an intent to benefit him as a third person and the contract has to have been entered into directly and primarily for his benefit. Thus, a third party cannot recover upon a contract unless the contract indicates an intention to secure some benefit to him.[13] The allegations of the complaint do not show that Northwest Psychiatric Clinic has any right of action directly against the defendants by virtue of any services rendered by direct agreement between the plaintiffs and the defendants. Northwest can certainly demand the reimbursement provided for by its own contract of employment with the plaintiffs but failing such reimbursement, the contracts as pleaded in the complaint do not show that it can then look directly to the defendants for the

[13] *Winnebago Homes, Inc. v. Sheldon* (1966), 29 Wis. 2d 692, 699, 139 N. W. 2d 606; *Peters v. Peters Auto Sales, Inc.* (1967), 37 Wis. 2d 346, 155 N. W. 2d 85.

reimbursement owed by plaintiffs as a third-party beneficiary under the contract.

The defendants also contend in their reply brief that the plaintiffs allege that they had an "arrangement" with Clinicare to make any payments due for services rendered directly to Northwest Psychiatric Clinic. The complaint does not bear this out. The plaintiffs alleged that they did turn over all fees received to Northwest or made arrangements for direct payment. However, they made no allegation about any arrangements for the payment of sums due under the alleged agreements which are the subject of this action.

Since we have concluded that Northwest Psychiatric Clinic is not a necessary party, it is not necessary to discuss the objections raised by the defendants to the validity of the assignment to the plaintiffs by Northwest Psychiatric Clinic of any claims it might have against the defendants arising from the contracts forming the basis of this action.

3. *Should other necessary parties have been joined to causes II, III, IV, V, and VI?* In its first decision the trial court struck this ground of demurrer for failure to specify with particularity the defect of parties claimed. In the second demurrer the defendants were specific, but the trial court only mentioned the issue of Northwest Psychiatric Clinic. And in the third decision, the trial court referred to its earlier decisions on this point in overruling the demurrer on this ground. Thus, the trial court never addressed itself to the merits of the contention that there are other missing necessary parties to causes of action II, III, IV, V, and VI.

It is clear that it is not necessary to join the unnamed persons who performed the services in causes of action IV and V. The plaintiff Lorenz alleged that these parties had been paid by Northwest Psychiatric Clinic and that the defendants owed him funds collected from agencies

for the services rendered. These allegations are admitted on demurrer.

As to causes of action II and III, the question of whether all necessary parties have been joined is a much more difficult question. In its first decision the trial court struck the defendants' objection of a defect of parties for failure to particularize the objection. However, the trial court mentioned that the attorney for the plaintiffs had referred on oral argument to Polder and Lee as third-party beneficiaries of the alleged contracts, Exhibits A and B. This reference was in response to defendants' motion to strike them as parties and their argument that neither of them had pleaded facts sufficient to constitute a cause of action. The trial court said: "If this be the situation [Polder and Lee third-party beneficiaries] then it may very well be that those others named in the exhibits are necessary parties and should be brought in . . . ." But the trial court struck the objection and ordered the plaintiffs to make their allegations concerning the contract provisions between Polder and Lee and the defendants more definite and certain. The trial court felt that the issue of party defect would be more clearly delineated and could again be presented. However, in its second opinion the trial court did not address itself to this issue although the demurrer on this ground was overruled in the order which followed.

The first complaint alleges in cause of action II that the plaintiffs "did contract with said defendants" under a "proposal, a copy of which is hereto attached and made a part hereof as Exhibit A." Cause of action III alleges that "these plaintiffs did enter into a memorandum of understanding, a copy of which is attached hereto and made a part hereof." The second amended complaint alleges that on May 14, 1970, the plaintiff Lorenz made a written proposal to the defendant Clinicare under which

Lorenz was to furnish psychiatric services; Polder, clinical psychological services; and Lee, clinical social work services. Cause of action III alleges that plaintiff Lorenz entered a memorandum of understanding which was a confirmation of an agreement between Clinicare and these plaintiffs under which Lorenz was to be medical director, Polder, director of the Institute, and Lee, chief of social services.

The defendants claim that the contracts are for a lump sum payment to be shared among those providing services and that, therefore, all named persons in the exhibits should be made parties. The plaintiffs say this is not a joint undertaking and that each person's services are severable and distinct and can be sued on separately for their reasonable value.

The exhibits are unclear as to how much the persons mentioned, other than Lorenz, are to be paid and by whom. It could be that Lorenz was to be paid a lump sum and that he would pay their salaries out of this fee. Or it could be that Lorenz was to receive the fee solely for his own services and that Clinicare was to pay the reasonable value of the services performed by any professional person supplied by Lorenz.

It is clear that the resolution of the issue of a defect of parties will depend upon a construction of the alleged contracts which cannot be accomplished in the factual vacuum of the demurrer stage of the pleadings. It may appear at a later stage of the proceedings that additional parties must be added or that plaintiffs Polder and Lee must be struck as parties, but it was proper to overrule the demurrer on this ground for the above reason.

Under cause of action VI the plaintiffs each allege damages from their wrongful discharge from employment at the Lorenz Institute. They allege that they had access to patients and could charge them individually on a fee-for-service basis. This is a separate and individual

cause of action in each plaintiff and would not necessitate the joinder of any other parties. For this reason Polder and Lee should not be struck as parties plaintiff to cause of action VI.

4. *Is there another cause of action pending?* On June 14, 1971, a summons was served on Albert A. Lorenz in an action venued in Eau Claire county, entitled *Clinicare Corp. v. Albert A. Lorenz.* Thereafter an amended summons and complaint were served which added Northwest Psychiatric Clinic as a party defendant. The action in the case presently on appeal was commenced on June 21, 1971, by service of a summons and complaint.

It is the defendants' position that the action commenced on June 14, 1971, was pending between the same parties for the same cause of action as the case presently in question and that it was demurrable for that reason.

The complaint in *Clinicare v. Lorenz & Northwest Psychiatric Clinic* sets out three causes of action. The first two involve the alleged breach of a contract which is not the same as any relied on in the present action. The third cause of action apparently involves the same alleged contract as Exhibit B in the present action. The trial court overruled this demurrer to the complaint because it concluded that only one of the multiple causes of action was arguably the same and that in any event the parties to the two actions were not identical. The trial court was entirely correct in this decision.

This action should not be dismissed on the assumption that all the claims made herein will be adjudicated in the prior action commenced by Clinicare.

In American Jurisprudence it is stated:

". . . In some jurisdictions . . . abatement will not lie unless the plaintiffs are the same in both actions; hence the abatement does not lie with respect to cross suits pending in the same court where the relationship

of the parties is reversed, although both suits arise from the same acts or transactions." [14]

This is the rule in Wisconsin. In *Wood v. Lake* [15] the court said that as to parties:

". . . They must in general be the same parties plaintiff and defendant in both actions. And it is not sufficient that they be the same person, but they must be the same as plaintiffs and defendants; and if their position in this respect be reversed, the plea will be bad."

And in *Calteaux v. Mueller* [16] this court again said that "A plea of the pendency of a former action is fatally defective unless it shows an identity of parties or privies in the two actions."

It is clear here that the parties to these two actions are not identical and those that are have reversed positions in the two actions. The appellants urge that the assignment of Northwest makes the plaintiffs "privies." But the defendants have ignored the necessity of identical causes of action.

5. *Motions to strike.* The defendants moved to strike causes of action II through VI on the ground that the plaintiffs had failed to join Northwest Psychiatric Clinic as a party. This question has been thoroughly discussed in a previous section of this opinion. The defendants also moved to strike the causes of action because the plaintiffs were not the real parties in interest. It is clear that if Northwest Psychiatric Clinic is not a necessary party, the named plaintiffs are proper parties in interest.

In the alternative, the defendants moved to strike the plaintiffs as not being the real parties in interest. This

[14] 1 Am. Jur. 2d, *Abatement, Survival, and Revival,* p. 62, sec. 23.

[15] (1860), 13 Wis. 94, 103 (*84, *92).

[16] (1899), 102 Wis. 525, 528, 78 N. W. 1082.

was denied for the same reason that the causes of action II through VI were not struck.

*By the Court.*—Orders affirmed.