Anthony J. GASBARRA, Plaintiff,

v.

PARK–OHIO, INC., formerly known as Growth International, Inc., a Delaware corporation, and George A. Bricmont, Defendants.

No. 72 C 1562.

United States District Court, N. D. Illinois, E. D.

Oct. 8, 1974.

clusions and memoranda of law by both sides. The Court has considered these filings and has reviewed the evidence and finds and concludes as follows:

Plaintiff entered into an Agreement with Bennett Industries Inc. effective July 1, 1968. The contract superseded an earlier unexpired contract with Bennett and was for a principal term of five years. Par. 1 of the contract provided:

*Term.* The Company hereby employs the Executive, and the Executive hereby agrees to serve, as President of the Company or in such other executive capacity as the President of Growth International, Inc., and/or the Board of Directors of the Company may from time to time determine, for a period commencing as of the date hereof and ending on June 29, 1973 and thereafter until this Agreement is terminated as hereinafter provided. Executive has the option to renew this Agreement, on the same terms and conditions, for an additional two (2) year term after the expiration of the initial term of this Agreement by giving the Company written notice of his election to exercise his option prior to the expiration of said initial term. After July 1, 1973, if said option for an additional two (2) year term is not exercised by Executive, or if so exercised, then after July 1, 1975, this Agreement may be terminated by either party at any time by giving to the other party not less than sixty (60) days' written notice of such right to terminate.

The control of Bennett Industries apparently changed early in 1970, and plaintiff was replaced as president by Carl Millsom on March 16, 1970. He was relieved of all duties because the Board of Directors believed that his management of Bennett Industries had not produced a satisfactory profit. Plaintiff was ready and willing to perform his duties as an executive of Bennett or its parent Growth International Inc., as provided in the agreement, and was paid his full salary until March 6, 1972. On that date, Growth Internation-

Nathenson & Gussin, Donald M. Ephraim, Chicago, Ill., for plaintiff.

Harold E. Collins, Jurco & Collins, and Bruce T. Logan, Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., for defendants.

## DECISION

McMILLEN, District Judge.

This cause was heard by the Court without a jury and was taken under advisement on proposed findings and con-

al Inc., (a successor to the original obligee) attempted to terminate the contract by the following letter:

> You are hereby advised that your services are terminated immediately, and that your stock options and July 1, 1968 employment agreement, together with any and all benefits granted thereunder, are cancelled as of this date. . . .

> We are confident that you are in the best position to be fully aware of the reasons for this action.

We find and conclude that this termination was ineffective. It was, obviously, not provided for in par. 1 of the contract nor elsewhere, but defendants contend that plaintiff was found to have violated his fiduciary duties as a trustee of Bennett Industries' profit sharing fund and that this was discovered only after the new owner began investigating in January 1972. We find that the contract could not be terminated because of plaintiff's activities under the trust fund, a separate and independent entity, particularly since those activities resulted in no loss to the fund or to the company. The contract is for a fixed five year period and, although the company undoubtedly had the right to relieve plaintiff of his duties, it is difficult to conceive of any ground for depriving him of the financial benefits of the contract, short of something equivalent to embezzlement or theft from the company.

█ Not only the breach of trust but the other reasons now advanced for terminating the agreement were known or should have been known to defendants when plaintiff was removed from the office of president on March 16, 1970. Furthermore, the company's treasurer, on April 1, 1970, assessed interest against plaintiff for his improper borrowing from the fund, and he paid the interest promptly. The trust violation was known to other company executives by that time and probably earlier, but Chicago and Cleveland counsel advised that plaintiff's contract should not be terminated for this reason. In fact the company president orally ratified the agreement after plaintiff had been relieved of his corporate duties.

Article III–2(p) of the trust agreement provides that the trustees have the power and duty

> To furnish to the company from time to time as the company may request, but at least as often as each fiscal year of the company, a statement of account showing the condition of the trust fund and all investments, receipts, disbursements, and other transactions effected by the trustees during the period covered by the statement, which accounts shall be conclusive on all persons, including the company, except as to any act or transaction concerning which the company files with the trustees written exceptions or objections within 180 days after the receipt thereof, and the approval of any account, act, or procedure by the company shall be a full acquittance and discharge to the trustees with respect thereto;

Although this provision relates specifically to statements of account, it also requires the company to object to improper "transactions" within 180 days of the statement. An outside audit of the trust fund had been requested by plaintiff on November 11, 1969 and the accountant called attention to plaintiff's improper activities by a memo dated December 31, 1969, shown to defendant's auditor in March 1970. The audit was completed on July 17, 1970, after plaintiff had fully reimbursed the fund. Although the plaintiff's improper transactions were not reported in the audit, the defendant knew of them and was not justified in attempting to terminate plaintiff's contract some two years thereafter.

The defendant corporation specifically assumed the plaintiff's contract in November 1971. Although it knew of the audit, it did not learn of one breach of trust until a subsequent investigation by its present attorneys in February 1972. Defendant contends that this overcomes the 180-day limitation and twenty (20) months' condonation of fiduciary im-

proprieties. However, the violation discovered in February 1972 was of the same nature as the ones found by the audit. It was of much smaller dimension than the ones which were discovered in December 1969. It had been remedied before plaintiff's removal as an officer in March 1970. Two sets of competent attorneys had advised defendant in 1970 that the contract could not be terminated for this reason, and the corporation had made its election to remove plaintiff from office. It would be inequitable to allow cancellation by the defendant corporation which had specifically assumed plaintiff's contract in November 1971 with full notice of his past transgressions.

 Additional reasons now advanced for terminating plaintiff's contract are afterthoughts. These include taking excessive bonuses, reimbursement of expenses without proper supporting documents, and not devoting full time to company business, all before plaintiff was removed as president in March 1970. None of these accusations have been proved by the greater weight of the evidence, and all of them were known before or shortly after the removal of the plaintiff as president. Since they were not sufficiently well-established to justify cancellation in 1970, we find and conclude the same impediment existed in March 1972. We believe that when the defendant corporation assumed control of Bennett Industries late in 1971, its management became unhappy with paying a salary to plaintiff and receiving no benefits from him. Its president, the defendant George Bricmont, said more than once that he would like to find a way to get out from under plaintiff's contract. He seized upon the breach found by his attorneys in February 1972, persuaded his company's Cleveland attorneys that this could constitute grounds for termination, and wrote the letter of cancellation on March 6, 1972. We agree with defendants that the motive for terminating is not significant if the grounds exist, but we disagree that sufficient grounds were available in March 1972, which had not already been known

and exhausted by the company before defendants ever came onto the scene. Butterick Publ. Co. v. Whitcomb, 225 Ill. 605, 80 N.E. 247 (1907).

Since the contract was not in fact terminated, it was properly subject to unilateral extension for two years by plaintiff, pursuant to Par. 1 (supra p. 2). This was accomplished by his letter dated June 22, 1973. Hence plaintiff is entitled to his contract amount to date, with interest at the rate of 5% pursuant to Ch. 72, § 2 of the Illinois Revised Statutes, his claim being based on an instrument in writing. Penn Central Co. v. Chicago, Milwaukee, St. Paul Railroad Co., 433 F.2d 943 (7th Cir. 1970). It remains to be seen whether defendant terminates by giving 60-day written notice after July 1, 1975, but plaintiff will be entitled to his salary up to that time.

 We do not agree with plaintiff that his attorneys' fees can be recovered from the defendant company pursuant to Ch. 13, § 13 of the Illinois Revised Statutes, however. We take judicial notice that Illinois' common law does not authorize the recovery of legal fees by the prevailing party in a suit at law. See Reiss v. El Bauer Chevrolet Company, 96 Ill.App.2d 266 at 270, 238 N.E.2d 619 (4th Dist.1968). The statute seems to apply to wages of employees, and plaintiff in this case is suing for a contractual payment. In fact he was not technically an employee after March 16, 1970 but served as a "consultant" who is paid for doing nothing. Such a situation is recognized by Section 6 of the contract, and no Illinois case has extended the benefits of the foregoing statute to persons in a position similar to plaintiff's.

██ We further find that the defendant George A. Bricmont committed slander *per se* against the plaintiff in May 1972 at a Board of Directors' meeting of the defendant corporation. In discussing the termination of plaintiff's contract, he called him a thief and said he "took one for himself and one for the company". This statement is tanta-

mount to accusing plaintiff of a crime as well as a breach of trust, and plaintiff need not prove actual damages. Whitby v. Associates Discount Corp., 59 Ill.App. 2d 337, 207 N.E.2d 482 (3rd Dist.1965). We also think it evident that the statement was made with malice, since Bricmont knew it was not true and had no justifiable ground for making the accusation.

When Bricmont testified, he denied making the statement. However, in his pre-trial deposition, he merely said that he could not recall it. Two other persons testified to the statement by Bricmont or to similar statements by business associates of his, which indicates that the source of the accusation was most probably Bricmont.

On the other hand, we can see no justification for saddling the corporation with these indiscretions. They were in the nature of personal comments and not in the furtherance of the corporation's business. Nor can it be said that any of the slanderers had the authority or apparent authority to commit this tort. We therefore find and conclude that judgment should be entered in behalf of the corporate defendant on Count II. The complaint of plaintiff Bernice R. Davis on Count II has previously been voluntarily dismissed.

Since plaintiff suffered no actual damage from the slander, his punitive damages should be rather nominal but sufficient to assuage the insult and deter the slanderer from future transgressions. Defendant no doubt has incurred substantial attorneys' fees and will suffer a judgment of record. We find and conclude that $1,500.00 are adequate damages against defendant George A. Bricmont on Count II.

It is apparent that we agree with most of plaintiff's proposed findings of fact and conclusions of law and disagree with most of defendants' objections and counter-proposals. However, in the interest of simplicity, we will let the foregoing Decision stand as our findings and conclusions, as permitted by F.R.C.P. 52(a).