Carlo AFFETTO, et al.,
Plaintiffs-Appellants,

v.

TRW, INC., an Ohio corporation, and John Hancock Mutual Life Insurance Company, a Massachusetts corporation, Defendants-Appellees.

No. 79–1377.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 27, 1980.*

Decided Oct. 21, 1982.

Charles F. Marino, Chicago, Ill., for plaintiffs-appellants.

D. Kendall Griffith, Hinshaw, Culbertson, Meolmann, Hoban & Fuller, J. Robert Geiman, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants-appellees.

Before PELL, Circuit Judge, and SWYGERT and FAIRCHILD, Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

The question on this appeal is the proper interpretation of an Illinois statute allowing an attorney's fee to a plaintiff in a successful suit for wages, and whether an employee's action to recover pension and insurance benefits is a suit for wages.[1]

Plaintiffs are former employees of defendant TRW at a plant in the Chicago area. In 1973 TRW informed its Chicago employees that it was moving its operations to Georgia. The plant was closed in 1975, and plaintiffs' employment was terminated.

TRW had a retirement plan under which employees who fulfilled certain length of service requirements were entitled to an annuity at age 62. TRW also followed the practice of supplementing the annuity with life insurance and health insurance upon retirement at age 62 or 65, depending on the fulfillment of certain length of service requirements.

Plaintiffs were under 62 years of age when the plant closed. The termination prevented them from continuing in TRW employment until 62 or 65. They had met length of service requirements.

The plan was administered by John Hancock Mutual Life Insurance Company, also a defendant. TRW and Hancock took the position that employees must be actively employed by TRW at age 62 in order to receive the full annuity, although willing to pay an annuity in a reduced amount. TRW

---

* The parties agreed to waive oral argument.

1. Jurisdiction is founded on diversity. The parties agree that Illinois law governs substantive questions.

also contended that the right to insurance benefits was contingent upon the employee's remaining in the employ of TRW until retirement age.

The district court granted summary judgment in favor of plaintiffs on the annuity claim, holding plaintiffs were entitled to full annuities when they reached age 62. After a trial, the court found there was an implied contract under which TRW was obligated to provide the insurance benefits. Judgment was entered and defendants appealed, but did not challenge the ruling on the full annuities. This court decided, in an unpublished order, that the finding of an implied contract was not clearly erroneous, and affirmed.

While the appeal on the merits was pending, plaintiffs sought allowance of attorney's fees. The district court decided that the annuities were not "wages" under the Illinois statute relied on, and denied the claim. The court declined to consider the claim for fees with respect to the insurance benefits because the appeal was pending on that part of the case.

Plaintiffs appealed. The parties agree that we should decide the question of attorney's fees as to both annuities and insurance benefits although the latter was not addressed by the district court. We perceive no reason for limiting our consideration to the matter of the annuities.

Ill.Ann.Stat. ch. 13, § 13 provides:

Whenever a mechanic, artisan, miner, laborer, servant or employee brings suit for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he has brought suit is justly due and owing, and that a demand was made in writing at least 3 days before suit was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10 in addition to the amount found due and owing for wages, to be taxed as costs of suit.

No decision has been found in Illinois or elsewhere answering our question whether retirement annuities or insurance benefits which an employer obligates himself to provide are "wages" within the meaning of § 13 or a similar provision.

Plaintiffs argue that the purpose of § 13 was to aid employees in the collection of compensation due them and to discourage an employer from using his position of economic superiority to avoid paying an employee the agreed compensation. Plaintiffs would interpret "wages," in the light of that purpose, as meaning compensation for an employee's services. Conceding that in 1889 when § 13 was enacted retirement benefits for workers were not prevalent, plaintiffs contend that the meaning of "wages" should keep pace with the expansion of types of compensation for labor.

TRW contends for a very narrow reading of "wages." Although conceding that post-retirement benefits are part of an employee's compensation for his services, it argues that wages are "but one separate and distinct species within the genus of compensation. 'Wages' constitutes those payments which are immediately due and owing an employee for the services just rendered. It is that remuneration given for current labor at short intervals." Brief of TRW at 8.

Although the term "wages" has been given varying content in statutory definitions and court decisions, it is surely susceptible of the broad definition for which plaintiffs contend. Thus Webster's Third New International Dictionary defines "wage" (and "wages") as

a pledge or payment of usu. monetary remuneration by an employer esp. for labor or services usu. according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits. . . .

One synonym given is "EMOLUMENT" with the comment "EMOLUMENT" is bookish except in the plural when it often means the rewards, usu. other than pay, of one's work or office (wages include *emoluments* of value, like pension and insurance benefits, which may accrue to employees out

of their employment relationship—C. W. Boyce)....”[2]

Black's Law Dictionary, Fifth Edition, 1979, defines "Wages" as "[a] compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production."

Pension and insurance benefits have been held to be included in "wages" for the purpose of the requirement of collective bargaining under the National Labor Relations Act. *Inland Steel Co. v. National Labor Relations Board*, 170 F.2d 247 (7th Cir. 1948), enforcing an order of the Board and approving the decision of the Board, that:

> With due regard for the aims and purposes of the Act and the evils which it sought to correct, we are convinced and find that the term "wages" as used in Section 9(a) must be construed to include emoluments of value, like pension and insurance benefits, which may accrue to employees out of their employment relationship....

*Id.* at 251. A similar interpretation is found in *W. W. Cross & Co. v. National Labor Relations Board*, 174 F.2d 875 (1st Cir. 1949). In *U. S. v. Embassy Restaurant*, 359 U.S 29, 33, n.10, 79 S.Ct. 554, n.10, 3 L.Ed.2d 601, where the Supreme Court interpreted "wages" more narrowly, the Court cited *Inland Steel* and distinguished it on the basis that it had construed a statute different from the one before the Supreme Court.

Defendant TRW cites several decisions in which the term "wages" has been held to exclude retirement benefits. All deal with statutes which are different from the one before us. In each case the purpose of the statute was considered.

*Swartwout v. City of New York*, 369 N.Y.S.2d 865, 48 A.D.2d 341 (1975). In a statute providing that an employee who is injured by the city's condemnation of his place of work shall have a claim not to exceed his wages for six months, "wages" does not include pension fund contributions. Noting "a plethora of varying interpretations" of "wages," the court appropriately remarked: "This is not to say that they are inconsistent or incorrect, but rather it emphasizes the fact that the purpose, object and spirit of the statute must serve as the primary guide to its interpretation." 369 N.Y.S.2d at 868, 48 A.D.2d 341.

*O'Dell v. International Paper Company*, 262 So.2d 101 (La.App.1972), did not involve interpretation of a statute. A collective bargaining agreement required arbitration of disputes except that a matter of wages was not to be a subject of arbitration. Plaintiff claimed to be entitled to a payment supplementing his allowance for workmen's compensation, pursuant to an agreement to pay the difference between workmen's compensation and the amount paid under an insurance plan for nonoccupational accidents. The court held that "wages" meant only "wage scale" and the dispute should have been arbitrated.

*Caviness v. Andes & Roberts Brothers Const. Co.*, 508 S.W.2d 253 (Mo.App.1974). A statute provided a civil penalty for an employer's failure, after demand, to pay the unpaid wages of a discharged employee. The employer paid all current wages, but withheld for a time the balance in a savings fund which reflected deductions from wages at the employee's request. The court held that once the payroll deduction had been made the amount held in the account was a debt and not wages. The court additionally held that the statute was penal and must be strictly construed.

*U. S. v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). A bankrupt employer's obligations to the trustee of a welfare fund, pursuant to a collective bargaining agreement are not "wages ... due to workmen" entitled to priority under the Bankruptcy Act. There had been an earlier similar holding in *In re Brassel*, 135 F.Supp. 827 (N.D.N.Y.1955). In *Genix Supply Co. v. Board of Trustees of H & I Fund*,

---

**2.** The definition was narrower in Webster's Second Edition: "Pay given for labor, usually manual or mechanical, at short stated intervals, as distinguished from salaries or fees." "Emolument" was given as a synonym.

84 Nev. 246, 438 P.2d 816 (1968), the court distinguished *Embassy Restaurant* and the statute involved. The *Genix* court held that the claim of a trustee of a fund for a contractor's unpaid contributions, against a bond filed by the contractor with the state, was entitled to preference over the claims of suppliers. The applicable statute provided that the claim of an employee for wages shall be a preferred claim against the bond.

*General American Life Insurance Co. v. Isabell*, 523 S.W.2d 616 (Mo.App.1975). A statute provided that assignments of wages not yet earned shall be void. The employer maintained a group health policy for its employees pursuant to a union contract. The employer entered a hospital and assigned his interest in these benefits to the hospital. He died after accruing hospital expenses. His widow and administratrix claimed the benefits were wages and the assignment void. The court held they were not wages under that statute.

*Estate of Schroeder*, 53 Wis.2d 59, 191 N.W.2d 860 (1971), and *Bell v. Midland National Life Insurance Company*, 78 S.D. 349, 102 N.W.2d 322 (1960), considered actions to recover pension benefits which would have been untimely under two year statutes of limitations if deemed claims for "wages." In this context the courts held the claims were not for "wages" and were therefore timely. The Supreme Court of Wisconsin later cited *Estate of Schroeder* as an example of narrow construction "in favor of litigants to limit the number of actions which are barred." *Lorenz v. Dreske*, 62 Wis.2d 273, 281, 214 N.W.2d 753 (1974).

Although no Illinois decision has dealt with the question whether earned retirement benefits are included within "wages" for the purpose of § 13, there was a decision making it plain that the term is not to be given its narrowest construction. In *Reiss v. El Bauer Chevrolet Co.*, 96 Ill. App.2d 266, 238 N.E.2d 619 (4th Dist. 1968), plaintiffs recovered judgment for an annual bonus based on the amount of sales for the year. The court rejected the employer's claim that an annual bonus was not "wages" under § 13, saying, "The method

of payment is not controlling in determining whether a sum is wages." 238 N.E.2d at 622.

There have been Illinois decisions strictly construing § 13, as in derogation of the common law, "in determining what persons are within the statute," *Lites v. Jackson*, 70 Ill.App.3d 374, 376, 26 Ill.Dec. 288, 387 N.E.2d 1118 (1st Dist. 1979), and cases cited therein and in *Reiss*, 238 N.E.2d at 621. There have been none, however, holding that "wages," as used in § 13, must be given a narrow meaning.

TRW relies on a denial of an attorney's fee to a prevailing plaintiff in *Gasbarra v. Park-Ohio, Inc.*, 382 F.Supp. 399 (1974). That plaintiff had a contract to serve as President of defendant for a fixed term, once extended so as to end in 1975. In 1970 he was relieved of all duties and replaced as President. In 1972 the employer attempted to terminate the contract, and ceased payment. The court held the termination ineffective, and the plaintiff was entitled to "his contract amount" until effective termination. As to attorney's fees, however, the court noted that plaintiff was being paid for doing nothing and found the "contractual payment" not to be "wages" under § 13. The peculiar facts of the case readily distinguish it from a claim for retirement benefits.

TRW cites two Illinois statutory provisions which expressly or arguably exclude retirement annuities and retirement benefits from the definition of "wages."

Thus the Illinois Unemployment Compensation Act expressly excludes from "wages" payment under an employer's plan on account of retirement, disability, medical expense or death. Ill.Ann.Stat. ch. 48, ¶ 345(B). This definition is reflected in a formula for employer contributions to the unemployment fund and for the amount of a weekly benefit. The same definition provides limitations on amount which clearly demonstrate choices of policy. The exclusion may well have been made because it seemed sensible to provide unemployment benefits proportioned to normal cash earnings if employed, and to avoid administra-

tive difficulties in evaluation and computation.

The Illinois Wage Payment and Collection Act was enacted in 1974. Ill.Ann.Stat. ch. 48, ¶ 39m–1 to m–15. It fixes pay periods, time limitations for payment, method of payment, provides for assistance in collection by the Department of Labor, and regulates deductions from pay. It makes it a misdemeanor for an employer wilfully to refuse to pay, if able, "wages, final compensation, or wage supplements."

These terms are defined:

39m–2. Definitions—Wages—Final compensation—Wage supplements

§ 2. For all employees, other than separated employees, "wages" shall be defined as compensation for labor or services rendered, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays. Where an employer is legally committed through a collective bargaining agreement or otherwise to make contributions to an employee benefit, trust or fund on the basis of a certain amount per hour, day, week or other period of time, the amount due from the employer to such employee benefit, trust, or fund shall be defined as "Wage Supplements," subject to the wage collection provisions of this Act.

Obviously the Act has a purpose similar to that of § 13 in facilitating collection, but it has a structure which gives little help in deciding whether a suit to establish entitlement to retirement annuities and retirement insurance benefits is a "suit for wages" under § 13. In providing that wage supplements shall be treated as wages, Ill.Ann.Stat. ch. 48, ¶ 39m–8, and making it a misdemeanor to refuse wilfully to pay them, the Legislature showed a concern that enforcement of obligations to fund retirement plans be facilitated.

Although the provision of annuities and insurance benefits in the manner TRW provides them may well not be covered by the Act, the fact that they are not does not persuade us that a suit to establish entitlement is not a "suit for wages" under § 13.

The State of Oregon has a statute providing for allowance of attorney's fees in "any action for the collection of wages." ORS 652.200(2). *Hekker v. Sabre Construction Company,* 265 Or. 552, 510 P.2d 347 (1973), held that sales commissions were "wages" for the purpose of this statute. Oregon also has a statute providing for suit by a commissioner to collect wage claims assigned by employees. *State v. Oregon State Motor Association,* 248 Or. 133, 432 P.2d 512 (1967) had held that vacation pay constituted wages under that statute. In *Hekker* the Oregon court repeated and applied to the statute before it what had been said in the earlier case.

The opinion continues:

The policy of the statute is to aid an employee in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employee from promptly collecting his agreed compensation.... The policy of the statute is analogous to the policy underlying ORS 20.080, which allows the collection of attorney's fees in certain small tort claims. 248 Or. at 138, 432 P.2d at 515.

The attorney fee statute is based on similar policy considerations, and we believe its language should be construed in the same spirit. In common usage, "wages" has both a narrow meaning, suggesting payment for stated, relatively brief, intervals of labor, and a broader meaning suggesting various forms of payment for services rendered. It is, we believe, most consistent with the policies underlying ORS 652.200(2) to give the word, as used in that statute, a broad construction commensurate with the statute's purposes.

510 P.2d at 351.

As already noted, the district court did not consider the application for attorney's

fees on account of recovery of the retirement insurance benefits, provided by TRW, the employer. As to the retirement annuities, the district court stated that under the Illinois Wage and Payment Collection Act "an employer's obligation to make contributions *to* a pension fund is the same as his obligation to pay straight wages to his employees. However, the Act creates no obligation to pay pension benefits *from* a fund to the participants." The court appears to have analyzed this action as if brought by a beneficiary of a trust fund against a truly independent trustee. Here, however, it appears that the plan was for the employer to purchase annuities as needed, and that the suit established TRW's obligation to fund plaintiffs' annuities at a higher level than it was willing to concede. In these circumstances we have no difficulty viewing the action as one which established TRW's liability.

■ The district court also remarked that "another reason for narrow construction is that Ill.Rev.Stat. ch. 13, § 13 was enacted in 1889, when pension plans were not prevalent." To be sure, pension plans were not prevalent in 1889. Yet this does not necessarily require a construction of ch. 13, § 13 which excludes pension benefits from its coverage. A court must determine the purpose of the statute and determine if new conditions should be covered by the statute. "The object of a statute may be so general and its language so broad as to reach conditions barely coming within its intent and sweep although such conditions did not come into existence until years after its enactment." *Commonwealth v. Tilley,* 306 Mass. 412, 415, 28 N.E.2d 245, 247 (1940). The problem of including new developments under statutes passed when such a development did not exist is quite common. *Doherty v. Ayer,* 197 Mass. 241, 33 N.E. 677 (1908); *Re Fox Film Corp.,* 295 Pa. 461, 145 A. 514 (1929); *Spangler v. Corless,* 61 Utah 88, 211 P. 692 (1922); Radin, *Statutory Interpretation,* 43 Harv.L.Rev. 863 (1930). For an extensive collection of these cases, *see* W. Hurst, *Statutes in Court,* 237–45 (1970).

Indeed, in *State v. Oregon State Motor Association, supra,* defendant argued that vacation pay was not customary for non-salaried employees when the statute was passed. The court rejected the argument and gave the word "wages" a broad interpretation. *See* W. Hurst, *supra,* at 244 (discussing this decision).

The growth of pension and insurance benefits in employer-employee relations may make them as important as current payments were in 1889 and therefore not outside the scope of ch. 13, § 13.

■ Accordingly, we hold, both with respect to the retirement annuities and the insurance benefits, that the suit to establish entitlement was a suit for wages under § 13 and that an attorney's fee should be allowed against TRW, the employer.

The judgment appealed from is reversed and the cause remanded for allowance of a reasonable attorney's fee.