C. R. Meyer & Sons Company and another, Respondents, vs. Industrial Commission of Wisconsin, Defendant, and Grady, Appellant.

*December 9, 1927—January 10, 1928.*

*Workmen's compensation: Who is employee: Workman furnished with rented machine: Independent contractor: Evidence: Weight given to written contract.*

1. The operator of a stone crusher furnished to a contractor by its owners pursuant to a rental contract, who was under the control and direction of the contractor, and did work other than operating the crusher when requested by the contractor, and who was paid by and subject to discharge by the contractor, is an employee of the contractor entitled to compensation for injury, and not an independent contractor. p. 619.

2. In determining whether the operator was an employee or an independent contractor, the written contract between the parties, though of considerable weight as evidence, is not conclusive; the actual relationship of the parties at the time of the injury, the surrounding facts and circumstances existing at the time of the execution of the contract, the purpose for which it was executed, and the construction given it by the parties themselves being also entitled to weight. p. 619.

3. A person may be an employer and liable as such for injuries to an employee under the workmen's compensation act even though he does not direct the work of the employee, as long as he possesses the power to direct it.  p. 621.

4. An award of the industrial commission cannot be set aside if based upon credible evidence or upon a logical or fair inference deduced from the evidence.  p. 624.

APPEAL from a judgment of the circuit court for Dane county: A. G. ZIMMERMAN, Circuit Judge.  *Reversed.*

The appeal is from a judgment reversing an award of the *Industrial Commission* in favor of the defendant *Grady.*

The plaintiff *C. R. Meyer & Sons Company* is a corporation, and at the times herein mentioned was engaged in construction work as principal contractor for the Green Bay & Mississippi Canal Company.  McAbee and *Grady* are copartners and the owners of a stone crusher.

On the 23d day of October, 1925, the plaintiff and McAbee & Grady entered into the following written contract:

"This agreement, made and entered into this 23d day of October, 1925, by and between McAbee & Grady of West DePere, Wisconsin, parties of the first part, and *C. R. Meyer & Sons Co.* of Oshkosh, Wisconsin, parties of the second part,

"Witnesseth: The parties of the first part, for and in consideration of payments hereinafter specified, agree to furnish to the parties of the second part one twenty horsepower North West steam tractor with a main drive belt, one Universal jaw stone crusher 15 in. by 24 in. with conveyor.

"Party of the first part further agrees to keep all the above machinery in first class condition at their own expense and furnish two men to operate above crusher and engine to be paid by party of the second part at the rate of five ($5) dollars per day per man.

"Further, that party of the second part agrees to furnish all labor, water, fuel, oil, grease, and build a shelter over the above engine for the winter season.

"In consideration whereof, the party of the second part agrees to pay to the party of the first part for rental of the above equipment, twenty-five cents (25c) per cubic yard for

all material crushed, measurements to be determined at twenty-seven cubic feet (27 cu. ft.) to the yard of dry material.

"The party of the second part further agrees to have crushed not less than four thousand (4,000) cubic yards and as much more as they shall require. Payments to be made the 1st and 15th of each month.

"Further, party of the first part agrees to deliver and to set up above equipment at their own expense, but in case of a reset or sets the party of the second part shall pay the expense of so doing. The place of operation to be at the so-called Crush Dam, between Wrightstown and Kaukauna, Wisconsin.

"In witness whereof, the parties have hereunto affixed their hands and seals this 23d day of October, 1925.

"McABEE & GRADY.<br>"HENRY McABEE.

"Witness:                  EDWARD GRADY.
    "Wm. K. Kolb.          C. R. MEYER & SONS Co.
    "E. Brown.               Per H. D. Meyer, Secy."

Pursuant to the contract McAbee & Grady furnished one *Edward Grady,* a member of the copartnership of McAbee & Grady, to operate the crusher, and one Galloway to act as engineer. On the 11th day of December, 1925, *Grady,* who was attempting to oil certain gearing connected with the crusher, and while standing upon a ladder some sixteen feet in height, slipped in such a manner that his right hand became caught in the gearing, resulting in severe injuries, necessitating the amputation of his arm a short distance above the wrist.

Application for compensation was made by *Grady* as an employee of the plaintiff herein, and the same was awarded by the *Commission.* Thereupon the present action was begun in the circuit court, with the result that judgment was entered in favor of the plaintiff, reversing and setting aside the order of the *Industrial Commission.* From this judgment the defendant *Grady* has prosecuted this appeal.

For the appellant *Grady* there was a brief by *John V.*

*Diener,* attorney, and *Martin, Martin & Clifford,* of counsel, all of Green Bay, and oral argument by *Mr. Diener.*

*James T. Drought,* attorney, and *Ralph J. Drought,* of counsel, both of Milwaukee, for the respondents.

DOERFLER, J.   The question to be determined in this case is whether under the provisions of the written contract and of all the other facts and circumstances in the case *Grady* was an employee of the plaintiff and therefore entitled to compensation, or whether he was an independent contractor. The circuit court based its judgment exclusively upon the terms of the written contract and held that *Grady* was an independent contractor; that under the terms of the contract McAbee & Grady, for a certain consideration, were to furnish not only the crusher, but also two men to operate the machine; and that the amount paid per day per man for these two men was a part of the consideration of the contract between the plaintiff and McAbee & Grady, in addition to the fixed price to be paid for the amount of stone crushed.

Viewing the contract alone, there is considerable plausibility in the logic contained in the opinion of the learned circuit judge.   However, we cannot agree that even from the written contract alone it must necessarily follow that *Grady* was an independent contractor.   The contract, among other things, provides that McAbee & Grady were to furnish a certain crusher to *C. R. Meyer & Sons Company,* the plaintiff.   After this crusher was furnished and set up according to the terms of the contract, it is clear that the same was in the possession and under the control of the plaintiff exclusively.   We agree with the position taken by the learned counsel for the appellant that the contract itself was a mere renting contract.   The consideration to be paid to McAbee & Grady is termed in the contract itself as rent.   Furthermore, it is provided in the contract that McAbee & Grady were to furnish two men to operate the crusher and engine, and that they were to be paid by the

plaintiff at the rate of $5 per day for each man. The contract does not specify who the two men to be furnished shall be. There is nothing on the face of the contract which indicates in the slightest degree that any of the members of the firm of McAbee & Grady were to be furnished or employed to operate this machine. When the machine is furnished in accordance with the terms of the contract and the two men are supplied, McAbee & Grady have fully complied with their terms of the contract, excepting for the obligation assumed by them under and pursuant to which they agreed to keep the crusher and the engine in first-class running condition; and the men so furnished are as much under the control of the plaintiff as are the engine and the crusher.

The two men furnished were *Edward Grady*, a member of the firm of McAbee & Grady, and one Galloway, not connected with the firm. If, instead of furnishing these two men, entire strangers to McAbee & Grady had been furnished, under whose control, may we ask, would these men have operated the machine? Clearly, under the plaintiff's herein. Furthermore, a careful reading of the contract itself demonstrates that the two men were to be furnished by McAbee & Grady as a part of the obligation assumed by the firm, and that the provision for the furnishing of such men was inserted solely for the benefit of the plaintiff; and that being so, the plaintiff at any time could have dispensed with this provision and supplied its own men. This view can readily be taken and is well founded if we consider solely the terms of the contract.

This is not an action brought by either of the parties against the other for the purpose of obtaining a construction of the contract. *Grady*, as a member of the firm of McAbee & Grady, is a distinct entity from *Grady* as an employee (if he may be considered as such) of the plaintiff herein. The written contract, as evidence, may be deemed to have considerable weight in determining the question at issue, but it is not necessarily conclusive. What must be

borne in mind in the instant case is the actual relationship that existed at the time of the injury between *Grady* and the plaintiff herein; also the surrounding facts and circumstances existing at or about the time of the execution of the contract; the purpose for which the contract was executed; the construction given to the contract by the parties themselves during the period of its execution; and the acts of the parties which indicate their relationship to each other.

At or about the time when the contract was executed a discussion ensued between the contracting parties, and the statement was made that the machinery was liable at times to become broken down and that the operations of the crusher would during such times be suspended. The parties then considered that during these periods the two men furnished by McAbee & Grady would be without employment. Thereupon it was agreed that these men could be used in the performance of other labor than that involved in the operation of the crusher, and such other labor consisted of that which the plaintiff herein would furnish; and it is beyond question that while performing such other labor the men were under the exclusive direction, supervision, and control of the plaintiff. That such breakdowns frequently occurred is undisputed in the evidence, and that *Grady* and Galloway were frequently actually engaged in work other than that connected with the operation of the crusher is conceded in the evidence. But these men were not only under the direction of the plaintiff when the machinery was broken down, but they were at all times under its direction.

The plaintiff had in its employ on its contract a superintendent by the name of Johnson and a foreman by the name of Driesen, and these men from time to time supervised and inspected the work performed by the crusher. They admit that they supervised the work in so far as quality and quantity is concerned. They deny that they ever gave any specific instructions as to the details of operation. However, it is clear that *Grady,* outside of operating the crusher,

from time to time performed other work in and about the premises while the crusher was in operation. He assisted in removing stone from the hopper into the crusher. He also aided the men in removing the dust under the screen, and he performed other acts in aiding and assisting the other employees engaged in doing the work in and about the crusher; in fact, instead of attending to the mere operation of the machine, the greater portion of his time was occupied in performing other work, such as that herein indicated.

It must here be remembered that *Grady* was an expert in operating the crusher; that to perform the work about the crusher required from three to four men in addition to the two men employed in operating the engine and the crusher; that he was not only familiar with his own work, but was also competent to direct the other employees. In fact, Johnson, the superintendent, testified that *Grady* also acted in the capacity of a foreman. Under these circumstances the reason why Johnson and Driesen did not give specific directions to *Grady* becomes apparent. Directions' were unnecessary, because *Grady* was an expert in his field. A person may be an employer and liable as such for injuries to an employee, under the workmen's compensation act, even though he does not direct the work of the employees, as long as he possesses the power to direct. *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189.

When the contract was first executed the crusher was operated during the daytime for a period of about ten hours. It then became apparent that if the plaintiff was to complete its contract with the canal company within the time therein provided, it would be necessary to operate the machinery by two shifts. Therefore the plaintiff arranged for the operation of a night shift. *Grady* and Galloway were employed in the operation of the machine during the daytime, and separate operators were engaged during the nighttime. The night operators were engaged upon the recommenda-

tion of McAbee & Grady. These men were at all times under the exclusive control and direction of the plaintiff, and no member of the firm at any time attempted to either supervise or direct the work of these men. Does this not clearly demonstrate that the only interest McAbee & Grady had in the operation of this machine, outside of the consideration which they were to receive as rental for the use of the same, was the right to furnish two operators so that competent men might be on the job for the sole purpose of protecting the machinery from unnecessary breakages?

Assume that one of the night men proved incompetent, negligent, or became addicted to dissolute habits. In whom, under the contract and the facts and circumstances in the case, would the power rest of discharging this man, or, if not of discharging him, of admonishing him? Clearly in the plaintiff. The machine was in its exclusive possession, in law and in fact. It was rented by it for its own particular purpose, viz. to crush a certain quantity of stone which was necessary for the performance of its principal contract with the canal company. For this possession and for the service which the machine afforded, plaintiff agreed to pay a specific rental. Incompetent operation would affect both the quantity and the quality of the product. Therefore, necessarily and logically, the right to discharge remained with it and not with the firm of McAbee & Grady. This right to discharge was not merely confined to two night operators, but also extended to the day operators. It was a mere coincidence that *Grady* became one of the operators, in the first place, and it is quite apparent to us that if, instead of designating *Grady* as one of the operators, McAbee & Grady had designated some other person not interested with them in business, no claim of an independent contractor would ever have been raised in the event that such an operator had sustained an injury. As has already been said, the power of designation was suggested by the firm for the sole purpose of assuring its members that the men who

operated the machine were competent operators, and outside of the power of selection, every other power and every other obligation rested with the plaintiff.

There is no provision in the contract requiring the $5 per day for each of the two men to be paid to the firm of McAbee & Grady. On the contrary, the language indicates that this money was to be paid to the men individually; and this is what was actually done by the plaintiff during the period of the contract. The two men were carried upon the plaintiff's payroll, and they received their pay at the same time when the other employees were paid. The sum of $5 per day was a little more than was being paid for ordinary labor in the locality where this contract was performed. In order to insure the help of competent operators, the payment of a daily wage of $5 was a necessity, and it was therefore upon the suggestion of McAbee & Grady, for their own protection, that the daily wage was mentioned and the amount thereof specified. And here again it cannot be too strongly or too often reiterated that the firm desired competent men for a specific purpose, viz. to insure protection to their machinery, and that when competent men were furnished, McAbee & Grady were interested only in the amount of the rentals to which they were entitled. One of the usual and ordinary tests, and, in many instances, the decisive test, which stamps one engaged in performing work an employee rather than an independent contractor, is the fact that wages are paid, and that upon an hourly, daily, or weekly basis.

In addition to what has heretofore been said, the record discloses positive evidence not only as to what the actual services which *Grady* performed consisted of, but *Grady* himself testified to directions given him by the plaintiff, as follows:

"*Meyer & Sons Company* told me to go ahead and direct the stone in there; that is, get the bins in there, and as things come up and if there were any details, they would

tell me. They didn't tell me to wheel concrete or work on the river, but I suppose they had the right to tell me that, I was their employee."

Assuming that the latter sentence contains a mere conclusion of law, the former sentence above quoted clearly establishes an express direction given to *Grady* by the plaintiff with respect to the work he was to perform.

There are a number of other tests which might be analyzed and applied, all strongly indicating a relationship of employer and employee, but no useful purpose would be served thereby. The questions with which we are concerned and which should have been the guiding star of the circuit court, consist solely of whether there was credible evidence in the record to sustain the finding of the *Industrial Commission,* or whether from the evidence before the *Commission* a logical or fair inference sustaining its findings could reasonably be drawn. If the *Commission's* finding is based upon credible evidence or upon a logical or fair inference deduced from the evidence, then the *Commission's* award cannot be set aside. *Milwaukee v. Industrial Comm.* 160 Wis. 238, 151 N. W. 247; *Milwaukee Western F. Co. v. Industrial Comm.* 159 Wis. 635, 150 N. W. 998; *Wausau L. Co. v. Industrial Comm.* 166 Wis. 204, 164 N. W. 836.

The case was ably briefed and argued by both counsel, and we feel that every conceivable phase of the case which could be supported by fair logic was fully covered. We are convinced, however, for the reasons above set forth, that the judgment of the lower court must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to affirm the award of the *Industrial Commission,* and for further proceedings according to law.