INSURANCE COMPANY OF NORTH AMERICA and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 13. Argued November 26, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 192.)

For the appellants there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   The facts giving rise to the insurance coverage question are somewhat involved.   Milwaukee county purchased the unused Chicago & North Western Railway Company's depot buildings at the lakefront in Milwaukee and entered into a contract with D & B Investment Corporation (D & B) to raze the buildings. This contract provided that D & B was not to sublet any of the work without Milwaukee county's written consent and D & B was required to provide evidence of workmen's compensation insurance covering all employees who performed any obligation under the contract.   This later provision was complied with by the issuance of a policy by the Travelers Insurance Company to D & B.   Contrary to the provision of the contract, D & B entered into a contract with David Diaz by which he agreed to perform the work required of D & B in respect to the train and baggage sheds.

This transaction is also described as a purchase by Diaz of the sheds from Dore, the president of D & B, in January of 1967.   Before this contract was entered into there was a discussion between Dore, Diaz, and Matthes with reference to buying the train and baggage sheds and tearing them down or de-erecting them for salvage jointly by Diaz and Matthes.   Diaz and Matthes were friends and in the wrecking business and had done several razing

jobs together. It was then orally agreed that they would work together on this job and that Diaz would provide the money and the men for the job and Matthes would engineer and supervise the razing or de-erecting of the structure and supply some equipment. At the request of Diaz, Matthes obtained a workmen's compensation policy from the Insurance Company of North America, which company issued a certificate of insurance to D & B stating that a policy had been issued to Earl B. Matthes Company for standard workmen's compensation and employer's liability insurance. Matthes testified he told his insurance agent that he and Diaz entered into a verbal partnership agreement to de-erect the train and baggage sheds.

In January, 1967, Diaz organized and become president of the Atlas Steel Corporation (Atlas Steel) and the obligations of Diaz were performed by this company which also took over the financial aspects and bookkeeping of the project. All employees working on the job were paid by Atlas Steel. Matthes had equipment on the job but no employees, and neither he individually nor his company trade name had a payroll. All financial aspects of the job were handled by Atlas Steel and all payments for the job were made to that company. It was testified by Matthes and Diaz that they were operating under a verbal partnership although in their testimony neither of them keep their individual identities distinct from their respective company's identity or from a partnership entity.

At the time of the hearing there had been no final accounting between these two men and no payroll had been submitted to the Insurance Company of North America for the determination of the audit premium. At the time of his injuries Sandy Johnson was aware of some connection between D & B, Atlas Steel, and Matthes; but there is a conflict in the testimony whether Diaz informed Johnson that he was working for a partnership.

The department found Johnson was the employee of both Atlas Steel and Matthes doing business as Earl B. Matthes Company without concluding whether the relationship between the employers was a joint venture, a partnership, or something else. The department found them jointly but not severally liable for Johnson's injuries under the Workmen's Compensation Act. The circuit court took the view that a partnership was in effect created between Atlas Steel and Earl B. Matthes Company and the insurance company was estopped from proving the policy issued in the Earl B. Matthes Company's name did not cover the partnership.

The appellants argue a partnership in Wisconsin is a separate entity from the partners and in respect to workmen's compensation insurance the partnership is governed by sec. 102.31 (1) (b), Stats., which in effect provides that compensation insurance covering an individual does not inure to the benefit of a partnership of which he is a member, and insurance covering the partnership as an insured does not cover the partners as individuals. If we agreed with the view of the circuit court, we would be required to reverse.

But we do not think a partnership was created by Diaz and Matthes and the department did not find one was created. The testimony is somewhat conflicting as to the relationship of Diaz and Matthes, but in giving weight to the designation of relationship the parties used in referring to their participation in the project, we must consider they were expressing laymen concepts and not legal conclusions. Normally a partnership is not intended for a one-shot temporary joint business activity or a single transaction. *Barry v. Kern* (1924), 184 Wis. 266, 199 N. W. 77; *Reinig v. Nelson* (1929), 199 Wis. 482, 227 N. W. 14; *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911; *see also* 30 Am. Jur., *Joint Adventures,* p. 940, sec. 4. From their testimony, we conclude Diaz and Matthes did not know the legal difference between a joint venture and a partnership.

However, it is certain they intended to work together on this project of razing the baggage and train sheds and to share the profits and the losses although the exact proportion was not determined. It is also clear they had had such loose working arrangements covering prior wrecking jobs. Both Diaz and Matthes were on the job daily. Johnson understood Matthes had the right to supervise him on the job and Matthes knew he could do so whether he exercised his right or not. This is sufficient to establish the control factor. *C. R. Meyer & Sons Co. v. Grady* (1928), 194 Wis. 615, 621, 217 N. W. 408; *Ace Refrigeration & Heating Co. v. Industrial Comm.* (1966), 32 Wis. 2d 311, 145 N. W. 2d 777. While this arrangement may be nebulous and unsatisfactory from the standpoint of a third party, such an arrangement seems to be somewhat of a custom in the wrecking industry in Milwaukee. We think there is sufficient credible evidence to sustain the department's finding that Johnson was an employee of both Atlas Steel and Earl B. Matthes doing business as the Earl B. Matthes Company, and this finding should not be disturbed on appeal.

While this finding will not sustain a partnership, it will sustain a joint venture. In *Edlebeck v. Hooten* (1963), 20 Wis. 2d 83, 88, 121 N. W. 2d 240, this court prescribed four requisites to recognition as a joint venture: (1) Contribution of money or services but not necessarily in equal proportion by each of the parties; (2) joint proprietorship and mutual control over the subject matter of the venture; (3) an agreement to share profits though not necessarily the losses; and (4) a contract, express or implied, establishing the relationship. *See also Estate of Starer* (1963), 20 Wis. 2d 268, 121 N. W. 2d 872. A joint venture in this state is not a legal entity separate from the participants in the venture as a partnership is. An employee of a joint venture is the employee of all members of the venture, while in a partnership the partnership is the employer. Consequently, neither sec. 102.31 (1) (b), Stats., nor its rationale is

applicable and the insurance written in the name of one adventurer is sufficient to cover his joint liability.

Being an employee of two employers simultaneously is not unusual. However, the employee-employer relationship in a joint venture is different from the dual relationship in loan-employee cases or in cases where an employee is doing the work of two employers and the employers are independent contractors to a leasing agreement.

In *Cayll v. Waukesha Gas & Electric Co.* (1920), 172 Wis. 554, 560, 179 N. W. 771, this court pointed out without deciding that there could be two employers of one employee. In *Murphy Supply Co. v. Industrial Comm.* (1931), 206 Wis. 210, 213, 214, 239 N. W. 420, where a night watchman worked for two companies, the court considered the watchman was jointly employed by both companies but did not find both employers were liable because the accident occurred entirely within the place of business of one of the employers and the other employer was in no way responsible for the condition which caused the accident.

However, when an employee simultaneously performs service for two employers under their simultaneous control and the service for each is the same or closely related, there is authority for the proposition that both employers are liable for workmen's compensation. *See* 1A Larson, *Law of Workmen's Compensation,* p. 836, *et seq.*, sec. 48.40, citing *Famous Players Lasky Corp. v. Industrial Accident Comm.* (1924), 194 Cal. 134, 228 Pac. 5.

The typical situation in which courts have held employers to be jointly liable for workmen's compensation benefits is the case of the leased truck and driver, or leased specialized equipment and operator, where the lessor is accomplishing his business purpose of furnishing equipment and labor at a profit and the lessee is accomplishing the purpose of his business. In such situations, the control test to determine the employer status

may be satisfied by the lessor's retaining enough control to safeguard his interest in the valuable equipment and the lessee's assuming enough control or having the sufficient right to use the equipment and its operator to get his work done efficiently. *Wabash Smelting, Inc. v. Murphy* (1962), 134 Ind. App. 198, 186 N. E. 2d 586; *Leggette v. McCotter* (1965), 265 N. C. 617, 144 S. E. 2d 849; *Elwell v. Fake* (1962), 264 Minn. 329, 119 N. W. 2d 19; 1A Larson, *Law of Workmen's Compensation,* p. 838, sec. 48.40. But *see Hanz v. Industrial Comm.* (1959), 7 Wis. 2d 314, 96 N. W. 2d 533.

Insurance Company of North America argues this result is unjust because Matthes kept no books and had no payroll and there is no way to determine an audit premium. This argument overlooks the nature of the oral agreement. Since Atlas Steel kept the books reflecting this venture, no reason is advanced in the record why the Insurance Company of North America cannot audit Atlas Steel's books relating to the joint venture.

*By the Court.*—Judgment affirmed.