SUSSMANN, d/b/a Wilhelm Sussmann & Company, Plaintiff-Respondent, v. GLEISNER, Defendant-Appellant and Third-Party Plaintiff: DEL MONTE CORPORATION, Third-Party Defendant-Respondent.

*No. 75–446. Submitted on briefs September 6, 1977.—*
*Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 114.)

For the appellant the cause was submitted on the briefs of *James R. Mattison* and *Becker, Kinnel, Doucette & Mattison* of Milwaukee.

For the respondent the cause was submitted on the brief of *Weidner, Lemke & Cady* of Milwaukee.

For the third-party defendant-respondent the cause was submitted on the brief of *James R. Clark* and *Foley & Lardner* of Milwaukee.

ABRAHAMSON, J. The controlling issue is whether Gleisner's claim against the Del Monte Corporation, his former employer, is an action to recover unpaid salary, wages or other compensation for personal services, and is barred by sec. 893.21(5), Stats., a two-year statute of limitations. The trial court, in a well-reasoned opinion, concluded that it was. We agree.

Norbert J. Gleisner worked for Del Monte Corporation, or one of its subsidiaries, from 1958 through September 30, 1970. In April of 1965, Del Monte sent Gleisner to Hamburg, Germany as a sales supervisor. On July 15, 1974, Gleisner commenced a third-party action

against Del Monte[1] to recover a sum of money which had been deducted from his salary each month during his employment in Germany. This deduction, known as the "hypothetical tax factor," was calculated to be substantially equal to the federal income tax Gleisner would have had to pay if he were employed in the United States.[2]

Gleisner contends that Del Monte agreed to pay him the "hypothetical tax factor" less any taxes Del Monte paid to the German government on his behalf. Gleisner never filed a German tax return, and the German government did not make any tax assessment against him. Del Monte, on the other hand, admits it agreed to reim-

---

[1] This lawsuit originally began on June 7, 1973 when Wilhelm Sussmann, d/b/a Wilhelm Sussmann & Company, a food broker representing Del Monte in Germany, sued Gleisner on a promissory note given by Gleisner to Sussmann. Judgment was entered for Sussmann. In this appeal, Gleisner has not denied liability on the note, but attacks the judgment arguing that the amount Del Monte allegedly owes him should be set off against his debt to Sussmann.

[2] Gleisner was apprised of the hypothetical tax factor in a memorandum he received from Del Monte prior to his going to Germany. The memorandum explained various aspects of employment and compensation for Del Monte's employees abroad. The statement regarding income tax adjustments was as follows:

"*INCOME TAX ADJUSTMENTS*

"The full amount of any foreign income tax you are required to pay on earned income resulting directly from your employment will be reimbursed to you by the Corporation. Such reimbursement will be made upon receipt from you a statement of income taxes paid.

"A U. S. income tax factor computed on your *base salary only* and equivalent to the U. S. income tax which you would pay on your base salary had you remained in the United States will be deducted from your total compensation of salary and allowances. For the year 1965 this factor amounts to $114.16 per month. In the event there is a need for adjusting this amount at the end of the taxable year, such adjustment will be made through our Tax Department; and any reimbursement due will be paid to you."

burse an employee for taxes actually paid, but asserts that there was no agreement to pay any part of the hypothetical tax factor to the employee. Rather, deducting the hypothetical tax factor was a method of equalizing salaries of Del Monte's employees in various countries.

Secs. 893.14, 893.21(5) and 893.19, Stats., are the applicable statutory provisions in issue:

"The following actions must be commenced within the periods respectively hereinafter prescribed after the cause of action has accrued . . . ."[3]

"Within 2 years: . . . (5) Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services."[4]

"Within 6 years: . . . (3) An action upon any other contract, obligation or liability, express or implied, except those mentioned in ss. 893.16 and 893.18."[5]

The problem presented is whether the two-year statute of limitation on unpaid salary or the six-year limitation on an action upon "any other contract" is applicable. In this case, as in many other employment cases, the employment relationship is undertaken on the strength of some sort of promise. We have previously stated that even though a salary claim is based upon an express employment contract, the shorter two-year "salary" statute—not the longer six-year "contract" statute —applies. *Estate of Nale,* 61 Wis.2d 654, 660, 213 N.W. 2d 552 (1973). This court has in a number of cases attempted to distinguish, for purposes of the statute of limitations, between claims for salary and claims for financial benefits under employment contracts which are not claims for salary. The distinction is difficult. In several cases this court has differentiated between

---

[3] Sec. 893.14, Stats.

[4] Sec. 893.21(5), Stats.

[5] Sec. 893.19(3), Stats.

the two relying in part on "the fruit of the labor" theory[6] and in part on the theory that the two-year statute of limitations should be construed narrowly.[7]

Thus the court has said that special contractual financial benefits such as pension trusts, welfare funds, vacation funds, stock purchase plans, and bonuses, although a form of compensation, are more than compensation and are not within the contemplation of the two-year statute of limitations. Such benefits which provide long-range security do not compensate for daily work so much as they purchase an employee's continued loyalty and service. *Green v. Granville Lumber & Fuel Co.*, 60 Wis.2d 584, 211 N.W.2d 467 (1973); *Estate of Schroeder*, 53 Wis.2d 59, 66–67, 191 N.W.2d 860 (1971); *Younger v. Rosenow Paper & Supply Co.*, 51 Wis.2d 619, 626, 188 N.W.2d 507 (1971).

The hypothetical tax factor involved in the case at bar can be distinguished from the special contractual financial benefits in the three cases cited. The tax factor involves a deduction from the employee's base salary, not a payment in addition to the base salary.

[6] "We think 'personal services' as used in sec. 893.21(5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service. While some personal services may result in a salable article or an end product, the distinguishing feature of personal services for the purpose of this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased." *Estate of Javornik*, 35 Wis.2d 741, 749, 151 N.W.2d 721 (1967).

[7] *Younger v. Rosenow Paper & Supply Co.*, 51 Wis.2d 619, 627, 188 N.W.2d 507 (1971); *Lorenz v. Dreske*, 62 Wis.2d 273, 280–281, 214 N.W.2d 753 (1973).

Even as Gleisner interpreted the contract, the tax factor would be a portion of his established base salary, payable either to the German government, or to him, or to both. We conclude, as did the trial court, that Gleisner's claim is for money allegedly withheld from and owing to him as part of his salary, not for an employee benefit distinct from and in addition to his salary. Therefore Gleisner's action must have been commenced within two years after the cause of action accrued. Sec. 893.21(5), Stats.

No statute defines when Gleisner's cause of action as stated in his complaint accrued. A cause of action accrues when there is "a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Holifield v. Setco Industries, Inc.*, 42 Wis.2d 750, 754, 168 N.W.2d 177 (1968), quoting *Barry v. Minahan*, 127 Wis. 570, 573, 107 N.W. 488 (1906). *See* Developments in the Law, *Statutes of Limitations*, 63 Harv. L. Rev. 1177 (1950).

The nature of and the terms of the employment contract ordinarily determine when the right to recover compensation for services accrues and when the statute of limitations begins to run. If we use Gleisner's theory of his case, there are three dates on which the cause of action may be said to have accrued.

The trial court stated the cause of action accrued no later than each April 15th following each taxable year:

"The cause of action for return of money withheld could have accrued at the end of each taxable year, on April 15 following each taxable year, or at the time the employment contract terminated. . . . If Gleisner's claim is based on the assertion that Del Monte did not pay out any sums for income taxes, the cause of action could not accrue any time later than April 15, 1971, the

last date a United States tax return could be timely filed for the last year of Gleisner's employment at Del Monte."

Or, the date of accrual could be fixed with regard to the requirements of the German tax rules, rather than the federal income tax rules, since it was the determination of Gleisner's tax indebtedness to Germany which would trigger his claim against Del Monte. Gleisner filed a United States tax return each year claiming a total exemption from tax because of his physical presence in a foreign country. He never filed a German tax return.

German income tax law does not operate on a self-assessment principle. The potential taxpayer submits the required factual and legal information, and an assessment is made by the local finance office. Gumpel, *Taxation in the Federal Republic of Germany* (2d ed.) 1311.1b, CCH World Tax Series 1969; Abgabenordnung [Fiscal Code] 1967, sec. 166(2). An individual's German income tax return covers the last preceding calendar year.[8] Gumpel, *supra,* at 1311.1c. Since the mid-1960's, individual returns were required to be filed on a set date in May of the year following the tax year in question. *Id.* at 1311.1d, n. 6; Killius, Business Operations in West Germany A–31, BNA-Tax Management, Foreign Income Portfolios 1975. During each year of his employment in Germany, Gleisner knew the date that the return should have been filed, that he had not filed a return, that no tax would be assessed by the German government for that year, and that, under his interpretation of the contract, Del Monte should reimburse him

---

[8] The date on which individual returns are due is determined each year by a commission acting with the consent of the Federal Minister of Finance. Einkommensteuer-Durchfuhrungsverordnung [Ordinance Regulating the Income Tax Law] 1968, sec. 56(3). Once the due date has been determined, it is printed in the newspapers and otherwise publicized. Gumpel, *supra* at 1311.1d.

the full amount of the tax factor deducted for that year. Thus a cause of action for each year of employment accrued in May of the following year. Gleisner's last year of employment was 1970. Under this view, his last cause of action for the year 1970 accrued in May, 1971, and he would have had to begin suit by the same date in May of 1973 to recover for the year 1970.

Gleisner's brief—arguing for a six-year statute of limitations—asserts that the claim for the hypothetical tax factor for all years of employment accrued on September 30, 1970, when Gleisner terminated employment and left Germany.

Under any of these three views as to when the cause of action for the deduction of the hypothetical tax factor accrued, Gleisner's cause of action is barred by the two-year statute of limitations since suit was not commenced until July 15, 1974.

Gleisner also claims that Del Monte should reimburse him for the total "hypothetical tax factor" ($1,592.10) deducted from his salary during his nine months of employment in 1970, because he paid income taxes to the United States for that year. His theory is that Del Monte would be unjustly enriched if it reimbursed him for only the $483 he actually paid in taxes.[9] Gleisner has not demonstrated any basis of entitlement to the total amount withheld, other than the claim we have found to be barred by the statute of limitations.[10] How-

[9] According to Gleisner, the difference in the amount deducted and the tax actually paid was the result of his total taxable income being reduced by deductible business losses.

[10] Since Gleisner was an overseas employee Del Monte had no obligation to withhold for federal income taxes. Withholding upon wages paid is required under Int. Rev. Code of 1954, sec. 3402(a). However, sec. 3401(a)(8)(A)(i) which defines "wages" for purposes of the section on withholding excludes any remunera-

ever, the trial court found that Gleisner's claim against Del Monte for reimbursement for federal income taxes actually paid on income earned during 1970, namely $483, was not barred by the two-year statute of limitations. The trial court reasoned, and we agree, that the sum for taxes actually paid by Gleisner is owed to Gleisner by Del Monte by virtue of the contract and is distinct from any claim he had for base wages or salary owed for personal services. Del Monte's agreement to pay federal income taxes was a promise to pay a benefit in addition to the base salary. The six-year statute of limitations that controls contract actions thus applies to the claim for $483. We agree with the trial court's determination that under the contract Del Monte must reimburse Gleisner in the amount of $483.

Gleisner argued that the amount Del Monte owed him should be set off against his debt to Wilhelm Sussmann & Company[11] because Del Monte and Sussmann were engaged in a joint venture in Germany. The elements which must be proved to establish a joint venture are the following: "(1) Contribution of money or services; (2) joint or mutual control; (3) an agreement to share profits although not necessarily the losses; and (4) a contract establishing the relationship." *Mortgage Associates v. Monona Shores,* 47 Wis.2d 171, 183, 177 N.W. 2d 340 (1970). While there was evidence showing that Del Monte contributed money and Sussmann contributed services, the trial court's determination that Gleisner failed to establish a joint venture is not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgments affirmed.

tion paid if, at the time of paying, it would be reasonable for the employer to assume the amount paid would be excluded from gross income under sec. 911. Sec. 911(a)(2) contains the presence in a foreign country exclusion.

[11] *See* footnote, 1, *supra.*