Russell J. BULGRIN and Susan M. Bulgrin,
Plaintiffs-Appellants,

v.

MADISON GAS & ELECTRIC COMPANY and Wisconsin Public Service Corporation, Defendants-Respondents,

SARGENT & LUNDY, INC., Gibralter Casualty Co., Buffalo Forge Company, Utica Mutual Ins. Co., Fire Systems, Inc., Allegheny Ludlum Industries, Inc., Liberty Mutual Ins. Co., and Underwriters at Lloyd's of London, Defendant-Appellants,

The WALDINGER CORPORATION, Fireman's Fund Insurance Co., Safety First Products Corporation, and Insurance Company of North America, Defendants.†

Court of Appeals

*No. 83–2231. Submitted on briefs June 17, 1985.—
Decided July 11, 1985.*
(Also reported in 373 N.W.2d 47.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiffs-appellants Russell J. Bulgrin and Susan M. Bulgrin the cause was submitted on the briefs of *Scott G. Pernitz* and *Winner, McCallum, Wixson & Pernitz* of Madison.

For the defendants-appellants Sargent & Lundy, Inc. and Gibralter Casualty Co., the cause was submitted on the briefs of *Donald L. Heaney, Michael J. Lawton, Kenneth B. Axe* and *Isaksen, Lathrop, Esch, Hart & Clark* of Madison.

For the defendants-appellants Fire Systems, Inc., Allegheny Ludlum Industries, Inc., and Liberty Mutual Ins. Co., the cause was submitted on the briefs of *Michael P. May* and *Boardman, Suhr, Curry & Field* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Eugene O. Gehl, Bradley D. Armstrong, Stuart S. Mukamal* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

Before Gartzke, P.J., Dykman, J., and Bruce F. Beil-fuss, Reserve Judge.

BEILFUSS, Reserve Judge.  Russell and Susan Bul-grin appeal[1] from a summary judgment dismissing their action against Madison Gas & Electric and Wisconsin Public Service Corporation.[2]  Russell was injured while working at the Columbia Energy Center in Portage.  He applied for and received worker's compensation benefits from Wisconsin Power and Light Company.  Section 102.03 (2), Stats., provides that the right to compensation is an employe's exclusive remedy against his employer.  The dispositive issue is whether MG&E and WPSC made a *prima facie* showing that Russell was also their employe under sec. 102.07 (1).  We conclude that they did not.  We therefore reverse.

Summary judgment is governed by sec. 802.08, Stats. Its purpose is to determine whether a dispute can be resolved without a trial.  Appellate and trial courts apply the same summary judgment methodology.  The court examines the pleadings to determine whether a claim is stated and a material factual issue is presented. If the complaint states a claim and a factual issue exists, the court examines the moving party's affidavits or other proof for evidentiary facts admissible in evidence to determine whether that party has made a *prima facie* showing for summary judgment.  It is only when the

[1] We certified this case to the supreme court.  Sec. (Rule) 809.61, Stats.  That court denied the certification by order dated May 7, 1985.

[2] Sargent & Lundy, Inc., Gibralter Casualty Co., Buffalo Forge Company, Utica Mutual Ins. Co., Fire Systems, Inc., Allegheny Ludlum Industries, Inc., Liberty Mutual Ins. Co. and Underwriters at Lloyds of London also appeal from the summary judgment dismissing Bulgrin's complaint against MG&E and WPSC. The arguments raised in their briefs are the same as those of Bulgrins, so we need not consider them separately.

moving party makes a *prima facie* showing that the court examines the opposing party's affidavit or other proof for evidentiary facts to determine whether a genuine factual issue exists or whether conflicting reasonable inferences may be drawn from the undisputed facts and a trial is necessary. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983).

### 1. *The Pleadings*

We summarize the Bulgrins' complaint. Russell was injured June 2, 1980 in a fire and explosion at the Columbia Energy Center in Portage, Wisconsin. WP&L was Russell's employer and self-insured worker's compensation carrier. WP&L, WPSC and MG&E jointly owned, operated and maintained the center on that date. MG&E and WPSC violated their nondelegable duty to Russell to provide a safe place of employment in violation of secs. 101.01(2)(g) and 101.11(1), Stats. These utilities were negligent for failing to remove an excessive amount of coal dust that had accumulated in a coal dust collector, to warn Russell about this hazardous condition, for placing him in a position of extreme danger without providing him with "adequate training, warnings, safeguards or protective equipment" and for failing to establish "safe firefighting methods and procedures." WP&L's negligence for these same acts and omissions is imputed to MG&E and WPSC under the laws of "agency, joint venture and partnership." MG&E and WPSC were negligent in selecting WP&L to operate the Center and in supervising that operation.

MG&E and WPSC's joint answer denies that they violated secs. 101.01(2)(g) and 101.11(1), Stats., or were negligent. The utilities affirmatively defend that Russell was negligent, he was in their service under an express or implied contract when injured, and his third party tort action against them is therefore barred by ch. 102, Stats.

The pleadings raise claims and factual issues of safe place violations and negligence, and defenses to those claims of contributory negligence and the exclusivity of ch. 102, Stats., as a remedy.

We next examine the affidavits of the moving parties MG&E and WPSC to determine whether they made a *prima facie* showing for summary judgment.

2. *The Affidavits*

MG&E and WPSC submitted documents[3] and affidavits by Richard Solboe, manager of fuels and fossil operations at WPSC and chairman of the joint plant operating committee of the Columbia Energy Center, Charles Michels, general ledger account supervisor at WP&L, Dale St. John, secretary and assistant treasurer at MG&E.

The documents and affidavits show these facts. WP&L, MG&E and WPSC jointly constructed, own and maintain the Columbia center. Operation of the center is governed by a series of agreements, one of which is entitled "Agreement for Construction and Operation of Generating Plant." Paragraph 9 of that agreement provides that

[t]he Companies shall establish an Operating Committee for the purpose of establishing general policies for the operation and maintenance of the 1975 Unit. All of the Companies shall be represented on the Operating Committee and the voting power of the representatives of each Company shall be in proportion to the Ownership Share of such Company. The vote of the representatives of Companies having Ownership Shares aggregating more than 50% shall be controlling on any question to be determined by the Operating Committee. The Operating Committee shall meet at the call of any member.

[3] Among these documents are copies of the "Joint Power Supply Agreement," February 2, 1967, "Agreement for Construction and Operation of Generating Plant," January 6, 1970, "Agreement for Construction and Operation of Columbia Generating Plant," July 26, 1973, and "Joint Power Supply Agreement," July 26, 1973.

The 1975 Unit will be directly operated and maintained by the "Operating Company" in accordance with good utility operating practices and the general policies to be established by the Operating Committee. Power Company shall be the Operating Company. It shall operate and maintain the 1975 Unit in the same manner as if it were one of its own generating stations, utilizing its own employees and supervisory personnel as required in the performance of this Agreement, and any independent technical advisers which it may select, and otherwise acting in all respects as though it were an independent contractor engaged by the Companies to be responsible for the result to be attained, i.e. generation of power and energy at the 1975 Unit, as economically as possible, and delivery thereof to the connected 345 KV transmission system for transmission to the Companies, the Operating Company having sole responsibility for the specific manner of attaining that result. During operation conditions which the Operating Company in its sole judgment deems abnormal, the Operating Company shall take such action as it deems appropriate to safeguard equipment and to maintain service of the 1975 Unit.

In hiring additional employees for work at the 1975 Unit, the Operating Company will give reasonable preference to qualified employees of the other two Companies who express their desire to work at the 1975 Unit and have the consent of their respective Companies to make an application.

A similar provision is found in paragraph 9 of the July 26, 1973 "Agreement for Construction and Operation of Columbia Generating Plant."

The Operating Committee was formed September 15, 1972. WP&L, MG&E and WPSC are represented on the Committee. WP&L has acted as the "Operating Company" since that date under "the direction and control of the committee." The Center is managed and operated according to the provisions of the "Columbia Energy Center Operating Manual," which is revised and approved by the Committee. WP&L prepares an annual budget for operating the Center. That budget must be approved by MG&E and WPSC. The Committee is in-

volved in the oversight and control of the Center's costs. Projected capital improvements are prepared by WP&L, reviewed by the Committee and approved by the financial officers of WP&L, MG&E and WPSC.

The Committee meets quarterly. Some meetings are held at the Center. At each meeting an official of WP&L presents a "detailed operating status report." That report discusses the Center's operations and maintenance experience, problems developing in the administration of the Center and a summary of scheduled maintenance and repair. The Committee may formulate policies for the Center's future operation based on these reports.

Members of the committee are informed of "all matters" affecting the Center's operation, including "financial requirements, maintenance and repair needs, modifications and improvements to the physical plant, fuel and other inventory needs, staffing needs, staff training, safety and environmental matters." Special reports are prepared for and acted on by the Committee. Information and technical data is exchanged between WP&L, MG&E and WPSC, and a "Joint Plant Operations Information Exchange" has been formed to facilitate that exchange.

The percentage ownership interests in the Center are WP&L, 46.2%, MG&E, 22% and WPSC, 31.8%. By agreement all costs including wages and benefits for the workers at the Center are paid in proportion to those ownership interests. Any third party tort claim will be shared by agreement in those same proportions.

3. *Prima Facie Case Showing*

We conclude that the facts in the affidavits and documents make a *prima facie* showing that a joint venture existed between WP&L, MG&E and WPSC.[4] We also

---

[4] MG&E and WPSC also argue that they made a *prima facie* case that "[m]any of the elements" of a partnership are present. They do not contend that all elements of a partnership were

conclude that the documents show that MG&E and WPSC surrendered to WP&L their right to supervise and control the employes at the Center. It is because of the parties' agreement that WP&L has the right to control employes at the Center that we reject the trial court's conclusion of law that Russell Bulgrin was also an employe of MG&E and WPSC under ch. 102, Stats.

4. *Joint Venture*

A joint venture exists when two or more parties agree to contribute money or services in any proportion towards a common objective, exercise joint ownership and control and share profits but not necessarily losses. *Sussmann v. Gleisner*, 80 Wis. 2d 435, 444, 259 N.W.2d 114, 118 (1977). Control need not be shared equally between members of a joint venture but may be delegated to one member. *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 620 (9th Cir. 1978).

We conclude that MG&E and WPSC made a *prima facie* showing that a joint venture existed between WP&L, MG&E and WPSC. Those utilities contributed money to build the Columbia Center. They share its operating expenses. Income in the form of the power produced by the Center is shared. WP&L, MG&E and WPSC have designated WP&L as an "independent contractor" in the operation of the Center.

We disagree with the trial court's conclusion that an employe of one party to a joint venture is an employe of all parties to that agreement, whether or not each has the right to control the details of the employe's work. An employe is a person under "contract of hire, express or implied." Sec. 102.07(1), Stats. The primary test to

shown. Issues raised but not argued are deemed abandoned. *Reiman Associates v. R/A Advertising*, 102 Wis. 2d 305, 306 n. 1, 306 N.W.2d 292, 294 (Ct. App. 1981). We note, however, that the control test is applicable to a partnership.

determine whether a person is an "employe" under sec. 102.07(1) is whether the employer has the right to control the details of that person's work. *Kress Packing Co. v. Kottwitz,* 61 Wis. 2d 175, 182, 212 N.W.2d 97, 100 (1973), *Ace Refrigeration & H. Co. v. Industrial Comm.,* 32 Wis. 2d 311, 315, 145 N.W.2d 777, 779 (1966). *See also* 1C A. Larson, *Workers Compensation Law* sec. 43.30 at 8–8 (1982). The better reasoned cases support our use of the control test in the joint venture context. *See, e.g., House v. Mine Safety Appliances Co.,* 573 F.2d at 620–21; *Kalnas v. Layne of New York Co., Inc.,* 414 A.2d 607, 609 (N.J. Super. Ct. App. Div. 1980). Professor Larson states:

> Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other.

*Worker's Compensation Law, supra,* sec. 48.40 at 8–394. The affidavits and documents submitted by MG&E and WPSC do not make a *prima facie* showing that they have retained the right to control the details of Russell's work.

MG&E and WPSC argue that the control test does not apply to a joint venture relationship. They rely on *Insurance Co. of N.A. v. ILHR Department,* 45 Wis. 2d 361, 173 N.W.2d 192 (1970), and cases from other jurisdictions cited in the footnote.[5] We reject the argument.

---

[5] *Horney v. Guy F. Atkinson Co.,* 140 Cal. App. 3d 885, 190 Cal. Rptr. 18 (Cal. Ct. App. 1983); *Kalnas v. Layne of New York Co., Inc.,* 414 A.2d 607 (N.J. Super. Ct. App. Div. 1980); *Conner v. El Paso Natural Gas Co.,* 599 P.2d 247 (Ariz. Ct. App. 1979); *Hammer v. Gibbons & Reed Co.,* 510 P.2d 1104 (Utah 1973); *Baker v. Billingsley,* 132 N.E.2d 273 (Ind. Ct. App. 1956); *Vincent v. Lake Charles Refining Company,* 434 So. 2d 170 (La. Ct. App. 1983); *Felder v. Old Fall Sanitation Co., Inc.,* 47 A.D.2d 977, 366 N.Y.S.2d 687 (N.Y. App. Div. 1975); *Burk v. Escher, Inc.,* 397 So. 2d 439 (Fla. Dist. Ct. App. 1981).

The joint venturers in *Insurance Co.*, *supra*, Diaz and Matthes, were on the job daily. Johnson, the injured employe, was hired by Diaz but understood that Matthes had the right to supervise him on the job and Matthes knew he had the right to do so. The *Insurance Co.* court affirmed the conclusion that Johnson was a Matthes employe. The court said that Johnson's and Matthes' knowledge that Matthes had the right to supervise Johnson was sufficient evidence to establish the "control factor." 45 Wis. 2d at 366, 173 N.W.2d at 195. The court concluded that an employe of a joint venture is the employe of all members in the venture and held that Matthes' worker's compensation was liable for Johnson's injuries. *Id.* at 366–67, 173 N.W.2d at 195–96.

The *Insurance Co.* case is consistent with our conclusion that the control test is applicable in the joint venture context. In the traditional form of joint venture, such as that in the *Insurance Co.* case, each party has the right of joint control over the work force. Here, however, the affidavits and documents show that WP&L operates the Columbia Center "as if it were one of its own generating stations, utilizing its own employees, and supervisory personnel . . . ." The inference is reasonable that WP&L exercises the day to day control over the details of Russell's work. MG&E and WPSC gave up their right to control employes at the Center. The facts in the affidavits and documents make a *prima facie* showing only that MG&E and WPSC exercise general control over the operating policy of the Center. MG&E and WPSC therefore failed to make a showing that Russell was their employe under sec. 102.07 (1), Stats. Because of this, we do not examine the affidavits submitted in opposition to the motion for summary judgment. Sec. 802.08, Stats.

Accordingly, the summary judgment of the trial court dismissing the Bulgrins' complaint must be reversed and

the cause remanded for trial on all issues. The merits of Bulgrins' claims are, of course, not before us.

*By the Court.*—Judgment reversed.